**Thomas R. GUILBERT,**
**Plaintiff–Appellant,**

v.

**Charles B. GARDNER, Jr., Charles B.**
**Gardner III, Marianne Gardner and**
**Douglas Gardner, Defendants–Appel-**
**lees,**

**Charles B. Gardner & Associates and**
**Charles B. Gardner & Associates,**
**Inc., Defendants.**

**Docket No. 04–1003–cv.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 3, 2005.

Decided: March 7, 2007.

Nathaniel B. Smith, New York, NY, for Plaintiff–Appellant, Charles B. Gardner.

Becker Ross Stone DeStefano & Klein, LLP (Howard Justvig, of counsel) for Defendants–Appellees, Charles B. Gardner, III, Douglas Gardner and Marianne Gardner.

Before WALKER, HALL and GIBSON,* Circuit Judges.

HALL, Circuit Judge.

Plaintiff–Appellant Thomas R. Guilbert ("plaintiff") appeals from an order of the district court (Jones, *J.*) granting the summary judgment motion of Defendants–Appellees Charles Gardner III, Douglas Gardner, and Marianne Gardner ("moving defendants") on plaintiff's claims under the Employee Retirement Income Security Act ("ERISA" or "the Act"), 29 U.S.C.A. §§ 1001–1461 (West 1999 & Supp.2004) as well as his claims for breach of contract, promissory estoppel, and fraud. Plaintiff also appeals that portion of the district court's order denying his motion for default judgment against Defendants Charles Gardner Jr., Charles B. Gardner Associates, Inc., and Charles B. Gardner & Associates ("non-moving defendants") and dismissing plaintiff's remaining state law claims without prejudice.

For the reasons set forth below, we affirm in part, vacate in part, and remand.

## BACKGROUND

For purposes of this appeal from summary judgment, we accept as true the following facts and allegations. In December 1991, Charles Gardner Jr. ("Charles Jr.") and his sons Douglas Gardner ("Douglas") and Charles Gardner III ("Charles III")[1] approached plaintiff, a former co-worker and family friend, about joining their new print brokerage business. Plaintiff later met with defendants to discuss the details of plaintiff's prospective employment. Plaintiff informed defendants that he had accumulated approximately $39,000 in pension funds at his present job. Charles Jr. allegedly told plaintiff that if he joined the company, in addition to his salary, defendants would establish a pension fund for him with an initial deposit of $39,000 and subsequent annual deposits of $10,000.

Plaintiff accepted the terms of the agreement ("the employment agreement") and began work in January of 1992. He worked for the company until it collapsed in 2000. In early 1992, plaintiff alleges that Charles Jr. wrote down the terms of the pension on a legal writing pad. This document has not been produced in discovery. In the summer of 1992, and on a number of occasions thereafter, plaintiff requested documentation of his pension, but none was provided. Plaintiff alleges that defendants orally assured him on numerous occasions that they had "taken care of" his pension benefits.

On August 24, 2000, August 31, 2000, and September 7, 2000, defendants tendered three checks, each in the amount of $1,178.98, to plaintiff as part of his salary.

---

* The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. For convenience, Charles Jr., Douglas, and Charles III will be referred to collectively as "defendants."

In addition, on August 28, 2000, defendants tendered a check for $9,131.00 as reimbursement for plaintiff's car lease. Each of these checks bounced. In September 2000, it became clear to plaintiff that defendants were not going to pay his past salary and had not established pension benefits for him.

Plaintiff brought this action in August of 2002. Plaintiff's amended complaint set forth nine causes of action. Plaintiff's first cause of action alleged that defendants were liable to him for his pension benefits under ERISA, 29 U.S.C.A. § 1132(a). The second cause of action alleged that defendants failed to comply with plaintiff's request for information pursuant to § 1132(c)(1) and failed to meet the notice requirements of § 1132(c)(3). As a result, plaintiff claimed that defendants were liable to him in such an amount as the court determined, up to $100 per day beginning on the date of each violation. Plaintiff's third, fourth, and fifth causes of action alleged breach of contract, promissory estoppel and fraud respectively. Pursuant to New York Labor Law § 198, plaintiff's sixth claim sought $3,536.94 in unpaid wages, $9,131 as reimbursement for a loan payment, as well as unpaid pension benefits. The seventh and eight causes of action alleged, *inter alia*, that Charles, Jr. transferred funds to Charles III, Douglas, and Marianne Gardner in order to defraud and defeat creditors' claims and hide defendants' assets. Plaintiff urged that these funds be set aside and held for seizure by plaintiff in satisfaction of his claims pursuant to New York Debtor and Creditor Law §§ 273–a and 276. The ninth cause of action set forth a claim for wages, expenses, and pension benefits under New York Business Corporation Law § 630.

Moving defendants filed for summary judgment. Plaintiff sought default judgment against non-moving defendants due to those defendants' failure to appear. In an opinion entered February 9, 2004, the district court granted summary judgment to all defendants. First, the district court rejected Plaintiff's ERISA claims. The court found there were "no surrounding circumstances other than defendants' alleged oral assurances from which a reasonable person could ascertain that defendants intended to set up the pension fund for Plaintiff." The district court held that oral assurances of a plan's existence are unenforceable and that therefore defendants had not "established or maintained" a pension program within the meaning of 29 U.S.C.A. § 1003(a).

The district court next dismissed plaintiff's breach of contract claim as untimely. Because of its determination that no ERISA plan existed, the court applied New York law to the breach of contract claim and held that the statute of limitations was six years pursuant to N.Y. C.P.L.R. § 213(2). The court also held that under New York law, when a contract does not specify a time for performance, the law implies a reasonable time for performance. The district court found that a reasonable time for performance would have been within a year of plaintiff's January 1992 start date and that therefore defendants breached and the cause of action accrued in January of 1993.

The court rejected plaintiff's argument that the cause of action accrued in September 2000 when Plaintiff became aware defendants were not going to provide him pension benefits. The court held that Defendants' alleged assurances about the pension were insufficient to re-start the statute of limitations because, under New York law, a promise to perform a previously breached contract must be in writing in order to start the statute of limitations running anew.

The district court next granted summary judgment on the promissory estoppel

claim. The court determined that under New York law promissory estoppel is not a valid cause of action in the employment context. The district court further granted summary judgment on the fraud claim. The court held that under N.Y. C.P.L.R. § 203(f), a claim for fraud must be commenced within six years from the commission of the fraud or within two years from the date that the fraud was discovered, or could have reasonably been discovered, whichever is longer. The court concluded that Plaintiff reasonably could have discovered the alleged fraud before 1999 and his action was therefore time-barred. In a footnote, the district court rejected Plaintiff's assertion that the statute of limitations for the breach of contract and fraud claims should be equitably tolled.

Finally, the district court held that there was no legally cognizable claim under which the non-moving defendants could be held liable and therefore granted summary judgment to nonmoving defendants *sua sponte*. The court dismissed plaintiff's motion for default judgment against nonmoving defendants as moot. The district court held that plaintiff's remaining state law claims failed to meet the amount in controversy requirement of 28 U.S.C.A. § 1332 and declined to exercise supplemental jurisdiction.[2] The court therefore dismissed those claims without prejudice. Plaintiff timely appealed.

### STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo.*

---

2. The district court failed to address plaintiff's ninth claim in the February 11, 2004 order. In a follow-up order entered February 20, 2004, the district court declined to exercise supplemental jurisdiction for failure to meet the amount in controversy requirement.

3. An "employee benefit plan" is defined as an "employee welfare benefit plan or an employ-

---

*Harlen Assoc. v. Incorp. Vill. of Mineola,* 273 F.3d 494, 498–499 (2d Cir.2001). Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine issue" exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor. *Harlen Assoc.,* 273 F.3d at 499; *Nabisco, Inc. v. Warner-Lambert Co.,* 220 F.3d 43, 45 (2d Cir.2000). "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assoc.,* 273 F.3d at 499 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Western World Ins. Co. v. Stack Oil,* 922 F.2d 118, 121 (2d Cir.1990)).

### DISCUSSION

#### I. *ERISA Claims*

Plaintiff first contends the district court erred in granting summary judgment on his ERISA claims. We are unpersuaded. ERISA covers "any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C.A. § 1003(a)(1) (West 1999 & Supp.2004).[3] In a case involving an alleged employee

---

ee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C.A. § 1002(3). An "employee pension benefit plan" is defined in turn as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the ex-

welfare benefit plan, this Court held that a plan, fund, or program under ERISA "'is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Grimo v. Blue Cross/Blue Shield of Vermont,* 34 F.3d 148, 151 (2d Cir.1994) (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (in banc)). A plan "need not be a formal written document," however. *Id.* (citing *Donovan,* 688 F.2d at 1372–73); *see also* 29 U.S.C.A. § 1003(a) (ERISA covers *"any* employee benefit plan" (emphasis added)).

In *Donovan,* the Eleventh Circuit rejected the proposition that the term "'establish' means no more than an ultimate decision by an employer ... to provide the type of benefits described in ERISA." *Donovan,* 688 F.2d at 1372–73. The court held that "[a] decision to extend benefits is not the establishment of a plan or program." *Id.* at 1373. Instead, "[a]cts or events that record, exemplify or implement the decision" can be introduced as "direct or circumstantial evidence that the decision has become reality." *Id.* The court emphasized that "it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." *Id.; see also Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985) ("We ... agree with *Donovan* ... that a mere allegation that an employer or employee organization ultimately decided to provide

an employee welfare benefit is not enough to invoke ERISA's coverage. Such an allegation fails to allege the 'establishment' of a plan. Something more is needed." (internal citation omitted)). Although neither *Donovan* nor *Scott* is binding on this Court, their logic is persuasive. We therefore look to whether there is a genuine issue of material fact as to "the reality" of an employee pension benefit plan.

In support of his claim that defendants established an employee pension benefit plan covered by ERISA, plaintiff presented his own deposition testimony to the following effect. Charles Jr. promised him a pension fund with an initial deposit of $39,000 and annual contributions of $10,000 thereafter. In early 1992, Charles Jr. wrote the terms of the pension plan on a legal pad and told plaintiff it would be filed in the company's records. On numerous occasions defendants assured him that the pension plan was established. Plaintiff also submitted deposition testimony from two other employees stating that plaintiff was owed money other than his salary. Finally, plaintiff submitted the company's tax returns indicating the company took certain tax deductions for "employee benefit programs." Viewing, as we must, this evidence in the light most favorable to plaintiff, we conclude that no reasonable fact finder could find that defendants "established or maintained" a pension plan under ERISA. Accordingly, the district court's grant of summary judgment on the ERISA claims is affirmed.[4]

---

tent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the ben-

efits under the plan or the method of distributing benefits from the plan.
*Id.* § 1002(2)(A).

4. Plaintiff also contends that defendants should be equitably estopped from asserting that he lacks evidence that a pension plan had been established. As this argument appears to have been raised for the first time on appeal, we do not consider it. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49

## II. *Fraud*

█ Plaintiff further contends that the district court erred in holding that his fraud claim was time-barred because (1) there are material issues of fact as to when plaintiff could have reasonably discovered the alleged fraud and (2) to the extent plaintiff's claim arises from misrepresentations occurring within six years of commencement of the action, the claim is timely. We affirm for substantially the same reasons set forth by the district court.

█ Under New York law, a claim for fraud[5] must be commenced either within six years from the commission of the fraud or within two years from the date that the fraud was discovered, or could reasonably have been discovered, whichever is later. N.Y. C.P.L.R. §§ 203(g), 213(8); *see also Siler v. Lutheran Soc. Serv.*, 10 A.D.3d 646, 782 N.Y.S.2d 93, 95 (App.Div.2004); *Julian v. Carroll*, 270 A.D.2d 457, 704 N.Y.S.2d 654, 655 (App.Div.2000); *Hillman v. City of New York*, 263 A.D.2d 529, 693 N.Y.S.2d 224, 225 (App.Div.1999). The plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action. *E.g., Siler*, 782 N.Y.S.2d at 95; *Julian*, 704 N.Y.S.2d at 655; *Hillman*, 693 N.Y.S.2d at 225. " '[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.' " *Armstrong v. McAlpin*, 699

F.2d 79, 88 (2d Cir.1983) (quoting *Higgins v. Crouse*, 147 N.Y. 411, 42 N.E. 6 (1895)).

In his amended complaint, plaintiff alleged that "[a]s an inducement to leave his job" defendants promised "they would provide him with an annual pension benefit of $10,000 and that they would fund the pension with an initial deposit of $39,000" if he joined their company. Although he requested documentation of his pension plan "in the summer of 1992, and on occasions thereafter," defendants never provided this information. Defendants, however, "continuously acknowledge[d] ... their pension obligation" to plaintiff and assured him that the pension "had been and would be taken care of." Thus, plaintiff's amended complaint alleged that defendants made misrepresentations more than six years before he commenced this action in August of 2001. To the extent his fraud claim rests on alleged misrepresentations occurring prior to August 1995, the claim is time-barred unless plaintiff can establish that he reasonably could not have discovered the fraud before the two-year period prior to August 2001. *See* N.Y. C.P.L.R. §§ 203(g), 213(8); *Siler*, 782 N.Y.S.2d at 95; *Julian*, 704 N.Y.S.2d at 655; *Hillman*, 693 N.Y.S.2d at 225. Aside from the now-missing legal pad, plaintiff does not claim to have seen any documentation of his pension plan whatsoever. Given the number of years he worked for the company, this dearth of documents alone should have suggested to him that something was awry. Moreover, each of plaintiff's repeated requests for documentary evidence of the plan was fruitless. This too should have raised suspicion. Under these cir-

---

L.Ed.2d 826 (1976); *Merrill Lynch & Co. v. C.I.R.*, 386 F.3d 464, 475 (2d Cir.2004).

**5.** (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing

the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury. *Jablonski v. Rapalje*, 14 A.D.3d 484, 788 N.Y.S.2d 158, 162 (App.Div.2005).

cumstances, we conclude that plaintiff reasonably could have discovered the fraud sometime before the two-year time period prior to August 2001.

■ Yet plaintiff's amended complaint also alleged that "[t]hroughout the period of [his] employment" plaintiff "received assurances that he had received, and was on an ongoing basis receiving, the pension benefits that were promised to him." According to plaintiff, defendants told him "on numerous occasions" that the pension had been "taken care of" when, in fact, defendants knew this to be false. We construe these portions of the amended complaint to allege that defendants made misrepresentations after 1995. To the extent that plaintiff's fraud claim rests on these later misrepresentations, the claim would be timely under N.Y. C.P.L.R. § 213(8). The amended complaint, however, fails to support a claim of fraud under New York law because it is duplicative of the breach of contract claim. *See Bridgestone/Firestone v. Recovery Credit Serv. Inc.*, 98 F.3d 13, 20 (2d Cir.1996) (holding that plaintiff did not maintain a claim for fraud because plaintiff failed to "(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages" (internal citations omitted)); *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 194 (1987) (affirming dismissal of negligence claims where "plaintiff has not alleged the violation of a legal duty independent of the contract"); *Brown v. Brown*, 12 A.D.3d 176, 785 N.Y.S.2d 417, 419 (App.Div.2004) (holding that plaintiff's fraud claim is "precluded by the fact that a simple breach of contract claim may not be considered a

tort unless a legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself—has been violated"); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (App.Div.1991) (holding that a fraud claim does not lie where it "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement"). We therefore affirm the district court's grant of summary judgment on the fraud claim.

## III. Breach of Contract

### 1. Statute of Limitations

Plaintiff argues that the district court erred when it determined that the breach of contract claim accrued when Defendants failed to establish the plan within the imputed one-year timeframe. According to Plaintiff, the claim instead accrued when Defendants rejected his claim for benefits. Plaintiff maintains that "[i]n a pension case, 'the limitation period begins to run when there has been repudiation by the fiduciary which is clear and made known to the beneficiaries.'"

■ Plaintiff asserts that *Miles v. New York State Teamsters*, 698 F.2d 593, 598 (2d Cir.1983) supports this proposition. Not so. In *Miles*, plaintiffs brought an action under ERISA to determine their eligibility for pension benefits. *Miles*, 698 F.2d at 595. This Court held there was no statute of limitations under the applicable ERISA provision and therefore applied the most applicable state limitations statute: the six-year limitations period prescribed by N.Y. C.P.L.R. § 213. *Id.* at 598. We then held that a plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, "when there has been 'a repudiation by the fiduciary which is

clear and made known to the beneficiaries.'" *Id.* (quoting *Valle v. Joint Plumbing Indus. Bd.,* 623 F.2d 196, 202 n. 10 (2d Cir.1980)). In a federal question case, such as Miles, when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues. *See Union Pac. R. Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.1998) (holding that in the absence of a statute of limitations under ERISA, the court applies the most analogous state statute of limitations but looks to federal common law to determine when the federal cause of action accrues); *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65 (7th Cir. 1996) (same).

■ A federal court generally employs the "discovery rule," under which "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Beckham,* 138 F.3d at 330. "Consistent with the discovery rule, the general rule in an ERISA cause of action is that a cause of action accrues after a claim for benefits has been made and has been formally denied." *Id.; accord Daill,* 100 F.3d at 66 (cause of action accrued when pension claim was denied); *see also Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44, 48 (2d Cir.1999) ("an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application for benefits"); *Miles,* 698 F.2d at 598.

In this case, the district court held that there was no cause of action under ERISA because Defendants had not "established or maintained" a program for purposes of the Act. Thus, unlike the above-cited cases, there was no underlying federal claim; the district court could not have looked to federal common law to determine when Plaintiff's breach of contract claim accrued. Miles is inapposite and the district court was correct to apply New York state law.

■ In the alternative, Plaintiff maintains the district court misapplied New York law. Plaintiff argues that because the pension plan required annual payments of $10,000, his claims for those payments could not have accrued in 1993. Plaintiff contends that under New York law, where there is a continuing breach of contract, the six-year statute of limitations bars only those claims for breaches occurring more than six years before the action was commenced. Thus, his claims for the annual $10,000 pension payments from 1995 until the 2001 are not barred.

■ In New York, the Statute of Limitations on a claim for breach of contract is six years. N.Y. C.P.L.R. § 213(2). In general, the limitations period begins to run when the cause of action accrues. N.Y. C.P.L.R. § 203(a). A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach. *See Ely–Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985, 986 (1993). The plaintiff need not be aware of the breach or wrong to start the period running. *See id.* 599 N.Y.S.2d 501, 615 N.E.2d at 987. Where a contract does not specify a date or time for performance, New York law implies a reasonable time period. *See Schmidt v. McKay,* 555 F.2d 30, 35 (2d Cir.1977); *Lituchy v. Guinan Lithographic Co.,* 60 A.D.2d 622, 400 N.Y.S.2d 158, 159 (App.Div.1977). An acknowledgment or promise to perform a previously defaulted contract must be in writing to re-start the statute of limita-

tions. *See* N.Y. Gen. Oblig. Law § 17–101 [6]; *Lew Morris Demolition Co. v. Bd. of Ed.*, 40 N.Y.2d 516, 387 N.Y.S.2d 409, 355 N.E.2d 369, 371 (1976); *Perez v. Bangkok Bank, Ltd.*, No. 87 CIV. 1753, 1989 WL 13749, at *1 (S.D.N.Y. Feb. 10, 1989).

 If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew. *See Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 415 N.Y.S.2d 817, 389 N.E.2d 130, 132 (1979); *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 744 N.Y.S.2d 586, 587–88 (App.Div.2002); *Orville v. Newski, Inc.*, 155 A.D.2d 799, 547 N.Y.S.2d 913, 914 (App.Div.1989); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 186 (App.Div. 1980). Because Defendants' obligation to contribute $10,000 per year to Plaintiff's pension fund was a continuing one, Plaintiff's claim that Defendants breached that obligation within six years of the commencement of this action is timely. *See Orville*, 547 N.Y.S.2d at 914 (holding that a contractual obligation to make minimum annual · debt payments was a continuing obligation and a breach of contract occurred each year defendant failed to make minimum payment).[7]

### 2. Statute of Frauds

 As an alternative basis for upholding the district court's dismissal of the contract action, moving Defendants assert that Plaintiff's breach of contract claim is barred by the Statute of Frauds. Although raised below, the district court did not address the Statute of Frauds argument in light of its determination that Plaintiff's action was time-barred. Moving Defendants argue that the employment agreement was either a contract to work for the projected twenty-year life of the company or a contract to work for one year commencing in January 1992 and that, in either case, the contract could not be performed in one year.

In his declaration in opposition to the summary judgment motion, Plaintiff testified as follows:

> Contrary to what the Gardners suggest in their motion papers, I was not hired for a fixed term of years. While it is true that Charles III told me that the new company was going to exist for 20 years and that he was going to run it with me after his father's expected departure in a few years, I did not believe, nor do I now contend, that the Gardners were promising me a 20–year employment contract or any other fixed-term contract. I expected that as I continued to work I would be entitled to a *pro rata* portion of my annual salary and a *pro rata* share of the pension credit for that same work period. It was my understanding that my working with the Gardners was "at will" and that I could quit working for them at any time and that they could terminate me at the time, owing me my unpaid wages and my accumulated pension credits.

---

6. Section 17–101 states as follows:
 An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.
 N.Y. Gen. Oblig. Law § 17–101.

7. Plaintiff's additional argument that the limitations period on his state law claims should be equitably tolled is without merit and was properly rejected by the district court.

Although Plaintiff's testimony as to the content of the employment agreement is not ultimately dispositive, in the context of a motion for summary judgment, we must view all evidence in the light most favorable to the non-moving party, in this case Plaintiff. *Harlen Assoc.*, 273 F.3d at 499. In this context, we therefore assume that the employment agreement was at-will and not for a fixed term of years.

New York law provides that an agreement will not be recognized or enforceable if it is not in writing and "subscribed by the party to be charged therewith" and if the agreement "[b]y its terms is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. Law § 5–701[a][1]. This provision of the Statute of Frauds encompasses "only those contracts which, by their terms, 'have absolutely no possibility in fact and law of full performance within one year.'" *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 670 N.Y.S.2d 973, 694 N.E.2d 56, 58 (1998) (quoting *D & N Boening v. Kirsch Beverages*, 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992, 993 (1984)). The Court of Appeals has concluded that, "under a plain reading" of the statutory language, "the provision relates to the performance of the *contract* and not just of one party thereto." *Id.* 670 N.Y.S.2d 973, 694 N.E.2d at 59 (emphasis in original). Thus, "full performance by all parties must be possible within a year to satisfy the Statute of Frauds." *Id.* If an agreement may be fairly and reasonably interpreted to permit performance within a year, the Statute of Frauds will not bar a breach of contract action no matter how improbable it may be that performance will actually occur within that time frame. *Id.* 670 N.Y.S.2d 973, 694 N.E.2d at 58 (collecting cases).

With certain exceptions, an at-will employment relationship can be terminated by either party for any reason or without reason. *Id.; Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 89 (1983). An at-will employment relationship may therefore usually be completed within a year. *Id.* 670 N.Y.S.2d 973, 694 N.E.2d at 59. Accordingly, the Court of Appeals has "typically held that employment agreements of this type are without the proscription of the Statute of Frauds concerning one-year performance." *Id.; see also Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 444 (1982) (holding that an employment agreement "whether terminable at will or only for just cause, is not one which, 'by its terms', could not be performed within one year and, therefore, is not one which is barred").

Moving Defendants nevertheless contend that because the employment agreement required annual $10,000 contributions to Plaintiff's pension fund, performance within one year was impossible. We disagree. In *Cron*, the Court of Appeals considered whether an alleged oral agreement to pay an employee an annual salary plus an annual bonus equal to 20% of the company's annual pretax profits was within the Statute of Frauds and therefore unenforceable unless in writing. *Cron*, 670 N.Y.S.2d 973, 694 N.E.2d at 57. Although the plaintiff alleged that the oral employment agreement was terminable at-will, the defendant company argued that because the bonus could not be calculated until after the calendar year expired, the agreement imposed an obligation on the company that could not be fulfilled within the year. *Id.* 670 N.Y.S.2d 973, 694 N.E.2d at 58. Resolving a split among New York courts, the Court of Appeals rejected this argument and held that "when the employment relationship is

terminable within a year and the measure of compensation has become fixed and earned during the same period, the sole obligation to calculate such compensation will not bring the contract within the one-year proscription of the Statute of Frauds." *Id.* 670 N.Y.S.2d 973, 694 N.E.2d at 60. Mindful that this rule "may represent a slight modification of language in previous case law concerning the necessity of full performance by all parties within a year to satisfy the Statute of Frauds," the Court observed that the original purpose of the Statute was to prevent "fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury but not to afford persons a means of evading just obligations." *Id.* 670 N.Y.S.2d 973, 694 N.E.2d at 61 (internal quotation marks and citations omitted). The Court of Appeals concluded that because "the measure of defendant's obligation to compensate its employee is fixed within a year, the dangers envisioned by the Statute of Frauds do not come into play." *Id.*

The measure of defendants' alleged obligation to contribute $10,000 annually to plaintiff's pension fund is likewise fixed within a year. Moreover, in contrast to the agreement at issue in *Cron,* the alleged plan in this case called for an annual $10,000 contribution to plaintiff's pension fund and did not depend on the calculation of an entire year's profits. Thus, unlike defendants in *Cron,* defendants here would not have been obliged to wait until the end of the year to calculate a *pro rata* share of plaintiff's pension benefits in the event that his employment was terminated. Plaintiff's breach of contract claim is not barred by the Statute of Frauds.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judg-ment on plaintiff's ERISA claims as well as his fraud claim, but vacate the district court's grant of summary judgment on Plaintiff's breach of contract claim to the extent that claim encompasses alleged breaches occurring within six years of August 2001. In light of this latter holding, we also vacate: (1) the district court's *sua sponte* grant of summary judgment to non-moving defendants; (2) the court's determination that diversity jurisdiction was lacking; and (3) the court's dismissal of plaintiff's sixth, seventh, eighth, and ninth causes of action. We remand for further proceedings consistent with this opinion.