James **COSTELLO** and Aron Moore, Plaintiffs,

v.

**HOME DEPOT USA, INC., Defendant.**

**Civil Action No. 3:11–CV–953 (JCH).**

United States District Court, D. Connecticut.

May 13, 2013.

Caitlin Duffy, Olimpio Lee Squitieri, Squitieri & Fearon, New York, NY, Mark P. Kindall, Robert A. Izard, Jr., Izard Nobel, LLP, West Hartford, CT, for Plaintiffs.

David Seth Poppick, Kathryn Elizabeth White, Epstein, Becker & Green, P.C., Stamford, CT, Joel M. Cohn, Ray E. Donahue, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, Patrick G. Brady, Epstein, Becker & Green, PC, Newark, NJ, for Defendant.

## RULING RE: PLAINTIFFS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 90)

JANET C. HALL, District Judge.

### I. INTRODUCTION

Plaintiffs James Costello and Aron Moore bring this action against defendant Home Depot U.S.A., Inc. ("Home Depot"), alleging that they were not paid for overtime work in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207, because they were misclassified as "exempt" employees. Plaintiffs filed this Renewed Motion for Partial Summary Judgment as to the proper method of determining overtime ("Pls.' Mot. Renewed Partial Summ. J.") (Doc. No. 90).

This Motion was filed the same day as Home Depot's Motions for Summary Judgment as to the claims against it (Doc. Nos. 93, 98). Soon thereafter, the parties filed a Joint Motion to Adjourn the Briefing Deadlines as to this Renewed Motion for Partial Summary Judgment (Doc. No. 103) pending resolution of Home Depot's Motions for Summary Judgment. That Motion was granted. *See* Doc. No. 104. On March 5, 2013, 928 F.Supp.2d 473, 2013 WL 837586 (D.Conn.2013), the court denied Home Depot's Motions for Summary Judgment (Doc. No. 120) and ordered the resumption of the briefing schedule regarding the instant Renewed Motion for Partial Summary Judgment.

For the following reasons, the court **grants in part** the Renewed Motion for Partial Summary Judgment.

### II. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the mov-

ing party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir.2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Id.* In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir.2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir.2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed.R.Civ.P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir.2007)); *see also Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## III. FACTUAL BACKGROUND

James Costello and Aron Moore were each employed by Home Depot as an Assistant Store Manager ("ASM"). *See* Plaintiffs' Local Rule 56(a)(1) Statement ("Pls.' 56(a)(1)") (Doc. No. 92) at ¶ 1; Defendant's Local Rule 56(a)(2) Statement ("Def.'s 56(a)(2)") (Doc. No. 123) at ¶ 1. Home Depot did not pay plaintiffs overtime while they were employed as ASMs. Pls.' 56(a)(1) at ¶ 2; Def.'s 56(a)(2) at ¶ 2. While plaintiffs were employed as ASMs, Home Depot paid plaintiffs on a salary basis for all hours worked in a work week regardless of the number of hours they worked. *Id.*

When Costello was promoted to ASM, he did not negotiate his salary. Pls.' 56(a)(1) at ¶ 3; Def.'s 56(a)(2) at ¶ 3. The parties do not appear to dispute that Costello never discussed whether his salary included an overtime premium for the hours he was expected to work over 40, but do appear to dispute whether this implies that Costello did not understand whether he would be paid overtime. *Id.* When Moore was hired as an ASM, his salary was not negotiated, and there was no discussion of whether his salary included an overtime premium, although the parties appear to dispute whether this implies that Moore did not understand whether or not he would be paid overtime. Pls.' 56(a)(1) at ¶ 4; Def.'s 56(a)(2) at ¶ 4.

While plaintiffs were employed as ASMs, Home Depot classified plaintiffs as exempt from overtime pay under the executive exemption provided by the FLSA and parallel state and commonwealth laws. Pls.' 56(a)(1) at ¶ 5; Def.'s 56(a)(2) at ¶ 5.[1]

---

**1.** Although not explicitly stated in the Local Rule 56 Statements, the parties do not appear to dispute that the ASM position is otherwise subject to the FLSA and that Home Depot is an employer to which the FLSA applies. *See* Ruling on Defendant's Motions for Summary Judgment (Doc. No. 120), 928 F.Supp.2d at 487–88.

In determining the exempt status of the ASM position, Home Depot relied, at least in part, on the job description. Pls.' 56(a)(1) at ¶ 6; Def.'s 56(a)(2) at ¶ 6. The parties dispute whether they had a contractual agreement that limited the number of hours plaintiffs worked as ASMs. Pls.' 56(a)(1) at ¶ 7; Def.'s 56(a)(2) at ¶ 7.[2] The parties also dispute whether the plaintiffs were required to work 55 hours per week, or whether the plaintiffs were merely generally scheduled to work 55 hours per week and could realistically expect an average work week to last 55 hours. Pls.' 56(a)(1) at ¶ 7; Def.'s 56(a)(2) at ¶ 7.

The parties dispute whether Moore ever worked less than 40 hours per week, and whether he averaged between 60 and 70 hours of work a week. Pls.' 56(a)(1) at ¶ 8; Def.'s 56(a)(2) at ¶ 8.[3] The parties dispute whether Costello ever worked less than 40 hours per week, and whether he averaged between 60 and 80 hours of work per week. Pls.' 56(a)(1) at ¶ 9; Def.'s 56(a)(2) at ¶ 9.[4]

Home Depot did not pay the plaintiffs any overtime for any hours worked over 40 hours in a week. Pls.' 56(a)(1) at ¶ 10; Def.'s 56(a)(2) at ¶ 10. The parties dispute whether Home Depot calculated a regular rate of pay for the plaintiffs and, if it did, whether it used a 40 hour work week as a measure for doing so. Pls.' 56(a)(1) at ¶ 11; Def.'s 56(a)(2) at ¶ 11.

Home Depot asserts that its business is seasonal and that the hours ASMs work fluctuates. Def.'s 56(a)(2), Disputed Issues of Material Fact at ¶ 6–7.

## IV. DISCUSSION

■ The sole issue before the court is the proper method for calculating the amount of overtime owed to the plaintiffs if, indeed, a jury determines that the plaintiffs were misclassified as exempt from the FLSA. The plaintiffs argue that the FLSA requires that all hours worked beyond the standard forty-hour workweek must be compensated at one-and-a-half times their regular rate of pay for hours worked beyond forty per week (the "time-and-a-half method"), with the regular rate of pay calculated at their weekly salary divided by forty hours. *See* Plaintiffs' Memorandum in Support of Renewed Motion for Partial Summary Judgment ("Pls.' Memo. Renewed Partial Summ. J.") (Doc. No. 91) at 1, 15. They further argue that misclassification cases are categorically different from other types of FLSA cases, and that they, by definition, cannot be subject to an alternative method of calculating damages. *Id.* at 6–17. It is undisputed here that Home Depot classified the plaintiffs as ex-

---

**2.** Home Depot asserts only that the plaintiffs have introduced insufficient evidence to show there is no material issue of fact as to the lack of a contractual limitation on the number of hours worked. It does not positively assert, or come forward with evidence, that such an agreement did in fact exist. Def.'s 56(a)(2) at ¶ 7.

**3.** Home Depot asserts only that Moore has introduced insufficient evidence to show there is no material issue of fact that he always worked 40 hours or more per week and that he averaged 60 to 70 hours per week throughout his entire work tenure. It does not introduce evidence to show, or argue affirmatively, that Moore ever worked less than 40 hours per week or ever averaged less than 60 to 70 hours per week, but implies that lower amounts were possible. Def.'s 56(a)(2) at ¶ 8.

**4.** Home Depot asserts only that Costello has introduced insufficient evidence to show there is no material issue of fact that he always worked 40 hours or more per week and that he averaged between 60 and 80 hours of work per week. Def.'s 56(a)(2) at ¶ 9. It does not introduce evidence to show, or argue affirmatively, that Costello ever worked less than 40 hours per week or that he ever averaged less than 60 to 80 hours per week, but implies that lower amounts were possible. *Id.*

empt from the FLSA, and that no overtime has been paid to them.

## A. Method of Calculation

Home Depot argues that the time-and-a-half method is not the exclusive means of calculating damages in misclassification cases. See Defendant's Memorandum in Opposition to Renewed Motion for Partial Summary Judgment ("Def.'s Memo. Renewed Mot. Partial Summ. J.") (Doc. No. 122) at 1. Instead, Home Depot asserts that in cases where, as here, the employee and the employer have entered into an agreement whereby the parties have a "clear mutual understanding" that the employee will receive a fixed salary intended to cover all hours worked, the employee has actually already been compensated for the "time" portion of "time-and-a-half" for all of the hours that employee worked. As such, only the remaining "half" needs to be paid back as missed overtime. See id. This is commonly referred to as the "half-time" method.

 In order to understand why these assertions are at odds in the misclassification context, it is important to provide some background. In general, the FLSA provides that an employee who works more than forty hours in a given week is entitled to compensation at "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Notably, this FLSA provision was not intended to encourage workers to seek the financial benefits of overtime work. See Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 577–78, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Rather, it was intended to make use of overtime more expensive from employers, in the hopes that the additional cost of using overtime workers would spur companies to hire additional employees to do the extra work, because a new worker would get paid at the cheaper regular rate.

See id. ("[A]lthough overtime was not flatly prohibited, financial pressure was applied to spread employment to avoid the extra wage and workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the act. In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect on the distribution of available work. Reduction of hours was a part of the plan from the beginning."). However, overtime was not required to be paid to certain "exempt" categories of workers.

In 1942, the Supreme Court approved a method of paying employees within the ambit of the FLSA that was different from the standard practice of paying employees an hourly rate of pay for the first forty hours worked per week and then time-and-a-half overtime payments for hours worked above forty. In Missel, the court considered an employment arrangement in which the employer paid the employee a fixed weekly wage, but the number of hours the employee worked varied from week to week. This method of payment was later dubbed the Fluctuating Work Week ("FWW") method. The issue before the court in Missel was somewhat different than that at issue here: the Missel court first focused on whether the FLSA only required companies to pay salaries above the minimum wage. "The Court held otherwise; the statute covered all levels of 'pay by the week, to be reduced by some method of computation of [an] hourly rate,' and that rate, rather than the minimum wage, should be used to calculate overtime." Hasan v. GPM Investments, LLC, 896 F.Supp.2d 145, 148 (D.Conn. 2012) (quoting Missel, 316 U.S. at 579, 62 S.Ct. 1216).

Following this discussion, the Missel court turned to the issue of calculating the

appropriate rate of compensation for overtime in the context of a fixed weekly salary. The court adopted a week-by week calculation. That is, the court understood that in a fixed weekly payment arrangement, some weeks would involve more hours worked than others, and in weeks where more hours were worked, the average rate of pay (and thus the overtime hourly rate owed) would be less. Equally true, in weeks where the employee worked fewer hours, the average hourly rate of pay would be higher as well, which would lead to higher hourly overtime payments. *See Missel*, 316 U.S. at 580, 62 S.Ct. 1216. The court acknowledged the consequences of such a rule. "It is true that the longer the hours the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question." *Id.*

The court in *Missel* had difficulty with the particular agreement (or lack thereof) at issue in that case, however, which did not lend itself to an easy calculation of what the parties actually agreed to in terms of the payment for hours worked. The *Missel* Court stated:

> Petitioner invokes the presumption that contracting parties contemplate compliance with law and contends that accordingly there is no warrant for construing the contract as paying the employee only his base pay or 'regular rate,' regardless of hours worked. It is true that the wage paid was sufficiently large to cover both base pay and fifty per cent additional for the hours actually worked over the statutory maximum without violating [FLSA's minimum wage provisions]. But there was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law.

*Id.* at 581. What the court meant by this analysis is not absolutely clear. "Though *Missel* allows employers to pay employees at fluctuating rates, the opinion provides little guidance about how to distinguish contracts for varying rates of compensation from a standard salaried position." *Hasan*, 896 F.Supp.2d at 148.

Following *Missel*, the Department of Labor promulgated an interpretive rule (29 C.F.R. 778.114) that attempted to codify *Missel* and outline when this FWW arrangement could be employed. *See, e.g., Russell v. Wells Fargo and Co.*, 672 F.Supp.2d 1008, 1011 (N.D.Cal.2009) (relying on *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir.2003)).

Section 778.114 provides that an employer and an employee may agree that the employee is to be paid a fixed salary "as straight time pay for whatever hours [the employee] is called upon to work in a workweek, whether few or many." Because the hours worked have, in effect, already been compensated by the straight-time payment, each hour worked over the agreed to hours ("overtime") earns only an additional fifty percent premium over the regular wage rate.

Section 778.114 requires both "(1) a clear mutual understanding that a fixed salary will be paid for fluctuating hours, *apart from overtime premiums;* and (2) the contemporaneous payment of overtime premiums." *See Perkins v. Southern New England Telephone Co.*, No. 7–CV–967, 2011 WL 4460248, *3 (D.Conn. Sept. 27, 2011) (emphasis in original) (quoting *Russell*, 672 F.Supp.2d at 1013 (N.D.Cal. 2009)); *see also Blotzer v. L–3 Communications Corp.*, No. CV–11–274–TUC–JGZ,

2012 WL 6086931, *10 (D.Ariz. Dec. 6, 2012) (listing five conditions for application of a FWW arrangement: "(1) the employee's hours must fluctuate from week to week, (2) the employee must receive a fixed salary, (3) the salary must meet the minimum wage standards, (4) the employee and the employer must have a clear mutual understanding that the salary (not including overtime premiums) is fixed regardless of the number of hours the employee works, and (5) the employee must receive overtime compensation for hours worked in excess of forty hours, not less than one-half the rate of pay"). However it is important to note that, despite the fact that numerous cases have relied on section 778.114, it was adopted without formal rule-making and, as a result, is entitled to less deference. *See Hasan*, 896 F.Supp.2d at 149 (citing *Christensen v. Harris Co.*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)).

The status of section 778.114 as an interpretive rule presents some complications for analysis in this case. As this court has previously determined in *Perkins*, entering into a typical FWW arrangement under section 778.114 requires *both* a clear mutual understanding that a salary covers fluctuating hours *and* contemporaneous payment of overtime. This is readily apparent from the language of section 778.114. *See* 29 C.F.R. § 778.114(a) ("Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums") for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of

hours he works is greatest, *and* if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.) (emphasis added). However, section 778.114 is not intended as a means of calculating damages. *See Blotzer*, 2012 WL 6086931 at *10 ("[Section 778.114] was drafted by the Department of Labor as 'forward looking' and only describes how employers and employees should structure an agreement for future compensation") (quoting *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 677 (7th Cir. 2010)). In other words, while section 778.114 might be the best guidance the court has as to the requirements of *Missel*, its two-prong test may not be what is actually required by *Missel* for an employer and an employee to enter into a fixed-salary fluctuating hour arrangement.

This is of great importance in the context of a misclassification case such as the one presented here. This is because, by its very nature, a case involving a misclassification does not contemplate the contemporaneous payment of overtime. *See Perkins*, 2011 WL 4460248 at *4 ("As SNET has not paid contemporaneous overtime premiums, section 778.114 is inapplicable to this case."); *see also Hasan*, 896 F.Supp.2d at 149 ("When an employer misclassifies an employee, the resultant employment contract will never fulfill any of the requirements of section 778.114"); *Blotzer*, 2012 WL 6086931 at *10 ("When an employee is erroneously classified as exempt and illegally being deprived of overtime pay, neither the fourth not fifth legal prerequisites for use of the FWW method is satisfied. The parties do not have a 'clear, mutual understanding' that a fixed salary will be paid for 'fluctuating hours, apart from overtime premiums' because the parties have not contemplated overtime pay. In addition, because the

employees were erroneously classified as exempt, overtime compensation was not provided contemporaneously."); *Rainey v. Am. Forest & Paper Assoc., Inc.,* 26 F.Supp.2d 82, 100–02 (D.D.C.1998) (finding that as a matter of law, the employer cannot prove a clear mutual understanding or contemporaneous payment of overtime premiums in a misclassification case); *see also Urnikis–Negro v. Am. Family Prop. Servs.,* 616 F.3d 665, 678 (7th Cir.2010) ("Besides looking forward rather than backward, the interpretive rule plainly envisions the employee's contemporaneous receipt of a premium apart from his fixed wage for any overtime work he has performed."). This court reiterates that, in a misclassification case in which the employer believes that no overtime payments are ever due to the employee, it is simply logically impossible to have the kind of "clear, mutual understanding" involving the weekly wage rate and contemporaneous overtime premiums contemplated by section 778.114. *See Rainey,* 26 F.Supp.2d at 102 ("If plaintiff were in fact exempt, she clearly would not have been entitled to any overtime compensation, no matter how computed, as the provisions for overtime compensation apply only to employees not exempt from § 207(a)."); *Perkins,* 2011 WL 4460248, at *3 (same). And clearly, if an employer classifies an employee as "exempt," the employer would never have paid overtime and thus will never satisfy the contemporaneous payment of the fifty percent overtime premium for overtime hours worked.

Indeed, Home Depot does not argue (nor could it) that it had a FWW arrangement with the plaintiffs in accordance with section 778.114. Instead, Home Depot argues that this fact is irrelevant because, while a forward-looking FWW arrangement requires satisfaction of the two prongs, backward-looking calculations of overtime *remedial compensation* do not,

according to *Missel.* "The half-time method for calculating unpaid overtime in misclassification actions is derived from, but not strictly based on, the fluctuating workweek method of determining overtime compensation." Def.'s Memo. Renewed Mot. Partial Summ. J. at 5. "The relevance of the regulation is that it provides the proper method for determining the amount of any unpaid overtime compensation where an employee receives a fixed salary for all hours worked and it is determined that the employee has been misclassified as exempt from federal overtime requirements." *Id.*

In other words, Home Depot argues, *Missel* does not bar all contracts that involve an agreement to have a fixed salary cover all hours worked but that do not provide for overtime compensation: it merely mandates that overtime compensation be paid (at the FWW rate because the employee will already have received straight time compensation). Following Home Depot's reasoning would mean that employers and employees can contract for a flat weekly payment that covers all hours worked (even without limit), without coming to an agreement on overtime payment, so long as overtime is, eventually, paid at the half time rate.

This more permissive reading of *Missel* does have support. *See Desmond v. PNGI Charles Town Gaming, LLC,* 630 F.3d 351, 356 (4th Cir.2011) ("[I]n *Overnight Motor,* the Court provided the formula to compute the overtime due an employee who was paid a fixed weekly salary intended to cover all hours worked."); *Urnikis–Negro,* 616 F.3d at 666 (noting that *Missel* approved the FWW method even when the agreement was for weekly wages to cover all hours worked, without a fixed cap). According to this understanding of FWW and of *Missel,* the pertinent question is not whether overtime compensation was con-

templated by the original employment agreement, but, rather, whether there was a "clear understanding" of what hours the flat salary payment was intended to compensate. *See Givens v. Will Do, Inc. Houston,* 4:10–CV–02846, 2012 WL 1597309, *7 (S.D.Tex. May 4, 2012). Such a reading would remove the automatic rejection of the all-hours-worked employment agreements suggested by this court's interpretation in *Perkins. See Perkins,* 2011 WL 4460248 at *4. It would also, by extension, mean that the other requirements necessary to establish a typical FWW agreement—such as the contemporaneous payment of overtime premiums mandated by section 778.114—do not apply to overtime calculations in a misclassification case because *Missel* itself does not make those requirements explicit.

Such a limited understanding of *Missel* is not persuasive for several reasons. First, and most obviously, Home Depot's reading would mean that an employer and an employee could mutually agree to depart from the standard, default FLSA arrangement of a forty-hour work week with time-and-a-half overtime, simply with an understanding that a salary is intended to cover all hours worked and with no mention at all of overtime payment. As several courts have observed, this would involve an employee waiving his entitlement to overtime payment, which is, simply, illegal. *See Hasan,* 896 F.Supp.2d at 150 ("[S]uch an agreement would be illegal. An employee would have to waive her statutory right to extra compensation for overtime.") (citing *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)); *Blotzer,* 2012 WL 6086931 at *12 ("[E]ven if Defendant could prove that Plaintiffs and Defendant had a clear, mutual understanding that Plaintiffs would work 50 hours a week without overtime pay, such an arrangement amounts to an agreement 'not to

receive their FLSA entitlement to overtime pay. This would be illegal. Employees cannot agree to waive their right to overtime pay.' ") (quoting *Russell,* 672 F.Supp.2d at 1014); *Zulewski v. Hershey Co.,* No. CV 11–05117–KAW, 2013 WL 633402, *5 (N.D.Ca. Feb. 20, 2013) ("If RSRs are found to be misclassified as exempt employees, the inquiry regarding whether individual RSRs consented to a FWW is improper because when employees are misclassified, they have unwittingly agreed to forego their entitlement to their overtime time—a right which cannot be legally waived.").

Second, although the text of *Missel* is not entirely clear on this point, *Missel* does mention failure to include a provision regarding contemplation of payment of overtime as a reason for rejecting the contract at issue in that case. *See Hasan,* 896 F.Supp.2d at 150 ("The [*Missel* ] court reasoned that the contract at issue did not comply with the FLSA because 'it [did not include a] provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage.' ") (quoting *Missel,* 316 U.S. at 581, 62 S.Ct. 1216). This lends further support to the argument that section 778.114 accurately reflects the holding of *Missel* and should counsel courts that they should not apply the fixed-weekly salary payment arrangement as a mere alternative to the standard FLSA compensation scheme: something more is required to justify deviation from the norm. In other words, this court concludes that an employee cannot achieve a clear, mutual understanding as to whether a fixed salary is intended to cover all hours worked unless that understanding includes some provision for the payment of overtime; without it, there is no understanding as to an "agreed wage" under *Missel. See Missel,* 316 U.S. at 581, 62 S.Ct. 1216.

Third, Home Depot's reading of *Missel* and the FLSA plainly run counter to the policy implications of that case and the statute itself. Indeed, "assessing damages using the fluctuating workweek method provides a perverse incentive to employers to misclassify workers as exempt, and a windfall in damages to an employer who has been found liable for misclassifying employees under the FLSA." *Perkins,* 2011 WL 4460248 at *4 n. 5; *see also Ransom v. M. Patel Enterprises, Inc.,* 825 F.Supp.2d 799, 810 n. 11 (W.D.Tex.2011) ("The significance of the employee's lack of knowledge of nonexempt status cannot be overstated. The fundamental assumption underpinning the FWW is that it is fair to use it to calculate overtime pay because the employee consented to the payment scheme. But in the context of an FLSA misclassification suit when consent is inferred from the employee's conduct, that conduct will always, by definition, have been based on the false assumption that he was not entitled to overtime compensation.").

On an even more basic level, it is not clear that the arrangement Home Depot proposes fits within the general spirit of what a FWW alternative method attempted to achieve. "For a fluctuating work week arrangement to make sense to both parties, employees should offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty hours. Otherwise, employees have not bargained for anything but decreasing marginal pay as they work longer and longer hours at work." *Hasan,* 896 F.Supp.2d at 150.

For all of these reasons, the court concludes that the proper damages calculation method is the "time-and-a-half" method and not the "half-time" method for all hours worked over 40.

## B. *Regular Rate of Pay*

■ The court's conclusions above do not, however, resolve a lingering, but related evidentiary issue: that even if the court applies a time-and-a-half method for determining back pay, the court must still determine what the "regular rate of pay" actually is, per hour, in order to know what to award to the plaintiffs if they are found not exempt. As observed in *Missel:*

No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates. Where the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate each week.

*Missel,* 316 U.S. at 580, 62 S.Ct. 1216. Clearly, a material issue of fact exists as to what number of hours per week the workers actually agreed here to work, if there was any such agreement. Whether the parties agreed to a contractual limit on the number of hours worked, and what the parties agreed to, is a question for the jury, should the plaintiffs prove successful before a jury on the issue of liability. This finding would then impact how damages would be calculated, based on the time-and-a-half method. *See, e.g., Hasan,* 896 F.Supp.2d at 151 n. 5 ("In its brief, GPM argues that even if the Court were to reject the use of the fluctuating work week in this case, the Court should determine the plaintiffs' regular rate by dividing their salaries by 52 hours, not 40. Defendant points to the plaintiffs' job description as evidence to support its claim—the description clearly states that store managers should expect to work a minimum of 52 hours per week. The court takes no posi-

tion at this time regarding the proper denominator for calculating a plaintiffs' damage award.").

## V. CONCLUSION

For the foregoing reasons, plaintiffs' Renewed Motion for Partial Summary Judgment (Doc. No. 90) is **granted in part.** **SO ORDERED.**