■ STEPHEN T.B. JABLONSKI, Respondent, v CAROLYN A. RAPALJE et al., Appellants. [788 NYS2d 158]—

In an action, inter alia, to recover damages for active concealment, the defendants Carolyn A. Rapalje and John M. Rapalje, as executors of the estate of Jayne E. Trost, also known as Jane Trost, and Carolyn A. Rapalje, as executrix of the estate of Donald L. Trost, appeal, as limited by their brief, from so much of an order of the Supreme Court, Putnam County (Hickman, J.), dated May 8, 2003, as denied that branch of their motion which was for summary judgment dismissing the first cause of action insofar as asserted against them, the defendants Robert A. McCaffrey Realty, Inc., and Robert A. McCaffrey separately appeal, as limited by their brief, from so much of the same order as denied that branch of their motion which was for summary judgment dismissing the second cause of action insofar as asserted against them, the defendant Linda Piermarini separately appeals from so much of the same order as denied that branch of her motion which was for summary judgment dismissing the second cause of action insofar as asserted against her, and the defendants SJB Inspections and Gertrude Bonvissuto, as executrix of the estate of Salvatore J. Bonvissuto, separately appeal, as limited by their brief, from so much of the same order as denied those branches of their motion which were for summary judgment dismissing the third and fourth causes of action insofar as asserted against them.

Ordered that the order is modified, on the law, by deleting the provision thereof denying those branches of the motion of the defendants SJB Inspections and Gertrude Bonvissuto, as executrix of the estate of Salvatore J. Bonvissuto, which were for summary judgment dismissing the third and fourth causes of action insofar as asserted against them and substituting therefor a provision granting those branches of that motion; as so modi-

fied, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiff payable by the defendants Carolyn A. Rapalje and John M. Rapalje, as executors of the estate of Jayne E. Trost, also known as Jane Trost, and Carolyn A. Rapalje, as executrix of the estate of Donald L. Trost, and the defendants Robert A. McCaffrey Realty, Inc., and Robert A. McCaffrey, and one bill of costs to the defendants SJB Inspections and Gertrude Bonvissuto, as executrix of the estate of Salvatore J. Bonvissuto payable by the plaintiff.

The plaintiff commenced this action to recover damages resulting from his purchase of a house with an attic that was infested with a seasonal bat colony. In the first cause of action, the plaintiff alleged that the seller, Jane E. Trost, and her spouse, Donald L. Trost (hereinafter the Trosts), actively concealed the infestation. In the second cause of action, the plaintiff alleged that the real estate agents, Robert A. McCaffrey Realty, Inc., Linda Piermarini, and Robert McCaffrey (hereinafter the real estate agents) actively concealed the infestation and fraudulently misrepresented that the evidence of the infestation came from birds which got into the attic through a broken vent pipe. In the third cause of action, the plaintiff alleged that the building inspectors, SJB Inspections and Salvatore Bonvissuto (hereinafter the building inspectors), fraudulently misrepresented that the evidence of the infestation had come from birds. In the fourth cause of action, the plaintiff alleged that the building inspectors breached their duty to inspect the house by failing to discover the infestation.

New York adheres to the doctrine of caveat emptor and imposes no duty on the seller or the seller's agent to disclose any information concerning the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller or the seller's agent which constitutes active concealment (*see Platzman v Morris,* 283 AD2d 561, 562 [2001]; *Glazer v LoPreste,* 278 AD2d 198 [2000]; *London v Courduff,* 141 AD2d 803, 804 [1988]). "If however, some conduct (i.e., more than mere silence) on the part of the seller rises to the level of 'active concealment' (*Slavin v Hamm,* 210 AD2d 831, 832; *see, Stambovsky v Ackley,* 169 AD2d 254, 257), a seller may have a duty to disclose information concerning the property" (*Bethka v Jensen,* 250 AD2d 887, 888 [1998]). To maintain a cause of action to recover damages for active concealment, the plaintiff must show, in effect, that the seller or the seller's agents thwarted the plaintiff's efforts to fulfill his responsibilities fixed by the doctrine of caveat emptor (*see Platzman v Morris, supra* at 562).

The Supreme Court found that the plaintiff had offered "a great deal of evidence, albeit much of it circumstantial, which, when viewed in the aggregate, raises a material, triable issue of fact" as to whether the Trosts and the real estate agents actively concealed the seasonal bat infestation. We agree with that assessment, and find, therefore, that the motions of those defendants for summary judgment dismissing the active concealment causes of action were properly denied (*see Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]).

The facts recited in the dissent support a finding that the Trosts and the real estate agents demonstrated entitlement to judgment as a matter of law, dismissing the plaintiff's active concealment claims. However, the dissent disregards the plaintiff's proof, which was sufficient to raise triable issues of fact regarding the active concealment claims. "Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a material and triable issue of fact (*see, Rotuba Extruders v Ceppos,* 46 NY2d 223, 231; *Phillips v Kantor & Co.,* 31 NY2d 307, 311). Issue finding, rather than issue determination constitutes the key to the procedure (*see, Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404)" (*Anyanwu v Johnson,* 276 AD2d 572, 572-573 [2000]). Moreover, in deciding the motion, the court is required to accept the opposing party's version of the facts as true (*see Rizk v Cohen,* 73 NY2d 98 [1989]).

The Trosts admitted at their depositions that they were aware of the seasonal bat infestation in the house, and that it had existed for the entire 36-year period that they lived in the house. Although Donald Trost testified at his deposition that there were always bats in the attic during daylight hours from mid-May until mid-October, the plaintiff testified at his deposition that he did not see any bats on his first three visits to the house, in July, August, and September, each of which occurred during the day, and included an inspection of the attic. The plaintiff testified to a strong smell of mothballs in the attic on each of these occasions and, on one occasion, there were electrical extension cords in the attic which had not been there previously. On another of his visits to the house, while waiting outside for real estate agent Piermarini to arrive, the plaintiff heard someone running up and down the stairs on second and third floors of the house, and then heard a toilet repeatedly flushing. Upon gaining entry to the house the plaintiff discovered real estate agent defendant McCaffrey in the house, who claimed that he was there cleaning up after some work which had been done in

the bathroom. In retrospect, and based on a plastic drop cloth he saw in the hallway that day and a conversation he had with Jayne E. Trost after the closing, wherein she advised him that she cleaned the attic by placing a plastic drop cloth on the floor to catch the bat guano, and flushing the guano down the toilet, the plaintiff surmises that McCaffrey was cleaning bat guano from the attic floor that day.

The plaintiff's expert, a professor in the biology department of a university, with extensive experience in bat research, stated in an affidavit that, without remediation efforts, bats would have been present and visible during the plaintiff's initial visits, but that the smell of mothballs and/or use of flood lights during the daylight could cause a bat colony to temporarily vacate the roost. Moreover, the plaintiff presented evidence that the attic was cleaned of droppings between the plaintiff's viewings of the house, and that only the Trosts and the real estate agents had keys to the house. Upon construing the evidence in the light most favorable to the plaintiff as the party opposing the motions for summary judgment (see *Corvino v Mount Pleasant Cent. School Dist.*, 305 AD2d 364 [2003]), the plaintiff established the existence of triable issues of fact as to whether the Trosts and the real estate agents took actions to actively conceal the bat infestation, and thwart the plaintiff's ability to discover it.

Additionally, the real estate agents were not entitled to summary judgment dismissing the cause of action alleging fraudulent misrepresentation. To recover damages for fraud, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury (see *Lama Holding Co. v Smith Barney,* 88 NY2d 413, 421 [1996]; *Shao v 39 Coll. Point Corp.,* 309 AD2d 850, 851 [2003]). The real estate agents demonstrated their entitlement to judgment as a matter of law dismissing the fraudulent misrepresentation claim (see *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853 [1985]), but the plaintiff raised triable issues of fact in opposition (see *Alvarez v Prospect Hosp., supra; Zuckerman v City of New York, supra*). While the real estate agent McCaffrey denied knowledge of the bat infestation, Donald Trost testified at his deposition that he told McCaffrey that there were bats in the attic. In addition, the plaintiff raised triable issues of fact as to whether he was justified in relying upon the statements by the real estate agent Piermarini that the evidence of the infes-

tation, droppings, and staining on the exterior of the house, came from birds.

We disagree with the dissent's conclusion that the plaintiff's claim of justifiable reliance is unsupportable because the plaintiff had ample opportunity to ascertain the condition of the attic. We have previously recognized that "whether a party could have ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual question" (*Country World v Imperial Frozen Foods Co.*, 186 AD2d 781, 782 [1992]). As noted, the plaintiff adduced sufficient evidence from which it could be found that the actions of the Trosts and the real estate agents were intended to, and did, thwart the purchaser's ability to discover the bat infestation. In that regard we note that the building inspectors hired by the plaintiff failed to discover the infestation despite, according to the inspection report, a thorough examination of the attic area. The fact that professional building inspectors found no evidence of the infestation on September 1, 1993, before the bat colony would have vacated the roost for winter, could support a finding that the efforts of the Trosts and the real estate agents to actively conceal the infestation were successful.

However, the Supreme Court should have granted those branches of the building inspectors' motion which were for summary judgment dismissing the third and fourth causes of action insofar as asserted against them. The building inspectors demonstrated entitlement to judgment as a matter of law by showing that they had no duty to inspect the house for an infestation of bats (*see Winegrad v New York Univ. Med. Ctr., supra*). The plaintiff, in turn, failed to raise a triable issue of fact in opposition (*see Alvarez v Prospect Hosp., supra; Zuckerman v City of New York, supra*). The expert report relied upon by the plaintiff does not demonstrate that the building inspectors breached their duty to inspect the house with respect to its structural, mechanical, and electrical components. Florio, J.P., Luciano and Spolzino, JJ., concur.

Goldstein, J., concurs in part and dissents in part and votes to reverse the order insofar as appealed from, grant each of the appellants' motions for summary judgment, and dismiss the complaint in its entirety, with the following memorandum, with which H. Miller, J., concurs: I agree with the majority that the plaintiff's causes of action against the building inspectors should have been dismissed. However, I disagree with the majority's conclusion that summary judgment was properly denied with respect to the plaintiff's first and second causes of action alleging that the Trosts and the real estate agents affirmatively

misrepresented and actively concealed a seasonal summer bat colony in the attic of the subject premises.

The majority acknowledges that "New York adheres to the doctrine of caveat emptor and imposes no duty on the seller to disclose any information concerning the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller which constitutes active concealment" (*Platzman v Morris*, 283 AD2d 561, 562 [2001]). The majority finds that although the Trosts and the real estate agents established their entitlement to judgment as a matter of law, the plaintiff raised triable issues of fact. It is my belief that the plaintiff's claims are refuted by the undisputed facts.

At his deposition, the plaintiff testified that he first viewed the subject premises in July 1993 in "full daylight" with two companions and the defendant Linda Piermarini, a licensed real estate broker associated with the defendant Robert A. McCaffrey Realty, Inc. The plaintiff stayed in the house for 45 minutes and spent a "long time" in the attic because he was concerned about a stain on the stucco on the outside of the house. The plaintiff "looked very carefully" at the "floor and windows and everything else" of the attic. He noted that there was "a very strong mothbally smell" and asked Linda Piermarini about it. According to the plaintiff, she replied that "the owners stored a lot of stuff up there." The plaintiff smelled the odor of "[a]nimal excrement, urine" on the second floor and to some extent on the first floor. He claims that Linda Piermarini attributed the smell to the owners' house pets and poor housekeeping.

Several weeks later the plaintiff saw the house a second time. On that occasion, the plaintiff had free access to all parts of the home including the attic. In the attic, he noted that additional wiring in the form of extension cords had been added since his last visit, but did not recall the presence of any additional lights. He recalled that the odor was "more intense" and there were "droppings" in the center of the floor in an area three-feet wide with "sweep marks" around the area of the droppings. The plaintiff claims that he asked Linda Piermarini what the droppings were and she said they were bird droppings. The plaintiff claimed that Piermarini also attributed the stain on the stucco on the outside of the house to bird droppings. The plaintiff's companion photographed the attic and the droppings. The plaintiff's claim of concealment is refuted by the fact that he was able to photograph evidence of the condition.

Thereafter, the plaintiff submitted a list of 23 written questions to the Trosts asking, inter alia, about leaks, repairs in the

last 10 years, the condition of plaster underneath panelling, the condition of floors underneath carpeting, whether there had been a radon test recently, and whether there was any asbestos in the house. There was no reference to the attic or the droppings in the written questions. The Trosts submitted written answers to each of his questions on or about August 20, 1993.

The plaintiff made an offer to purchase the premises contingent upon an engineer's inspection, "water, termite, septic & radon testing" and "inspection of roof." Since the plaintiff was concerned that the floors under the carpeting had been damaged by urine, carpeting was removed at his request.

The plaintiff was present during the inspection, which took place on September 1, 1993, and took three hours. The plaintiff and the inspector had "unhampered access" to the attic and all other areas of the house. The plaintiff still noted the odor of mothballs in the attic but the droppings were gone and the smell of urine was gone. He claimed that he demanded "a satisfactory explanation" from Linda Piermarini for the bird droppings which were present earlier and she informed him several days later that the inspector said birds were getting in through a broken pipe which would be repaired at the Trosts' expense.

Pursuant to the terms of the contract of sale, the plaintiff moved into the premises on October 28, 1993, in excess of two months prior to the closing. The plaintiff claimed he was told that he was "not supposed to store anything in the attic" prior to the closing but acknowledged that he had complete access to the attic during that period. He acknowledged that he went into the attic to confirm that the broken pipe had in fact been repaired.

Prior to the closing, around Thanksgiving in 1993, the plaintiff noticed that, despite the fact that the Trosts were no longer living there, the smell of urine had returned. The closing occurred in early January 1994.

In response to the prima facie showing by the Trosts and the real estate agents of their entitlement to judgment as a matter of law, the plaintiff failed to raise a triable issue with respect to fraudulent concealment (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Prior to making an offer to purchase the property, the plaintiff had the opportunity to see, smell, and photograph a three-foot-wide pile of droppings. Thereafter, the plaintiff submitted written questions to the Trosts which did not refer to the attic or the droppings. Carpeting was removed at his request so he could examine the condition of the floors underneath. The plaintiff hired an inspector who inspected the property in his

presence. He took possession of the property in excess of two months prior to the closing and full access to the attic and the rest of the house.

One of the elements of a cause of action sounding in fraudulent misrepresentation is justifiable reliance by the plaintiff on the misrepresentation or material omission (*see Lama Holding Co. v Smith Barney,* 88 NY2d 413, 421 [1996]; *Shao v 39 Coll. Point Corp.,* 309 AD2d 850, 851 [2003]). In light of the plaintiff's multiple opportunities to investigate the attic prior to the closing, both before and after assuming possession, the plaintiff's claim of justifiable reliance is unsupportable. The plaintiff had ample opportunity to ascertain the condition of the attic through the exercise of due diligence (*see Glazer v LoPreste,* 278 AD2d 198, 199 [2000]). Although the plaintiff freely exercised his right to inquire by submitting 23 written questions to the sellers he did not inquire about the droppings in the attic. Nor did he request an inspection addressed to the evidence of a pest infestation.

The plaintiff's own observations and his photographs thereof refuted his contentions of justifiable reliance as a matter of law (*see Berger-Vespa v Rondack Bldg. Inspectors,* 293 AD2d 838, 840 [2002]).

In view of the foregoing, I would dismiss the action in its entirety.