| |
|---|
| **Carlin v Brennan** |
| 2025 NY Slip Op 32077(U) |
| June 10, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 505686/2018 |
| Judge: Wayne Saitta |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 29 of the Supreme Court
of the State of New York, held in and for the
County of Kings, at the Courthouse, at Civic
Center, Brooklyn, New York, on the day
10th of June 2025.

P R E S E N T:

HON. WAYNE SAITTA, Justice.

—----------------------------------------------------------------X

MEREDITH CARLIN and FEDERICO
SCHENQUERMAN,

                Plaintiffs,

     - against -

LENORA BRENNAN, JOHN BRENNAN, DEBORAH
L. RIEDERS, CORCORAN GROUP, BRENT HEINE,
HALSTEAD PROPERTY LLC, SARAH E.
MARTEL, ESQ.,

              Defendants,

—----------------------------------------------------------------X

Index No.: 505686/2018

Decision & Order

Motion Sequence: 3 & 5

The following papers read on this motion:      NYSCEF Doc Nos:

| | |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Affidavits (Affirmations) and Exhibits | 134-148  230-242 |
| Cross-motions Affidavits (Affirmations) and Exhibits | |
| Answering Affidavit (Affirmation) | 154-162,163-180, 269-311, 250-268, 312-337 |
| Reply Affidavit (Affirmation) | 201-202, 246, 247, 249, 338-39 |
| Supplemental Affidavit (Affirmation) | |

Plaintiffs, MEREDITH CARLIN and FEDERICO SCHENQUERMAN, allege they

were fraudulently induced into purchasing a cooperative apartment, Apartment B, at 114

Remsen Street in Brooklyn, which was marketed as a legal two-bedroom unit but is legally

only a one-bedroom apartment.

[* 1]

The apartment consists of two levels — a basement level and a cellar level. Pursuant to the New York City Building Code, the cellar level is not legally habitable as living space and cannot be used for a bedroom.

Defendants JOHN BRENNAN and LENORA BRENNAN were the sellers of the apartment.

Defendant THE CORCORAN GROUP (CORCORAN) was the broker for the sellers. DEBORAH RIEDERS was an agent with CORCORAN, who represented the sellers.

Plaintiffs allege that defendants CORCORAN and RIEDERS falsely listed the apartment as a two-bedroom unit and deceptively staged it with a bedroom and bathroom on the cellar level.

Plaintiffs allege that the sellers, Defendants JOHN and LENORA BRENNAN (the BRENNANS or BRENNAN Defendants), also knowingly misrepresented the apartment as a two-bedroom and participated in deceptively staging the apartment with a bedroom and bathroom on the cellar level.

Plaintiffs also asserted claims against their own attorney, real estate agent, and engineer but those claims are not the subject of these motions.

Defendants CORCORAN and RIEDERS, and defendants BRENNANS, move for summary judgment dismissing all claims and cross-claims against them.

CORCORAN and RIEDERS contend that as the sellers' broker, they owed no fiduciary duty to the Plaintiffs, and that they made no affirmative misrepresentations. They further argue that Plaintiffs had access to the co-op's offering plan and an engineer's report that disclosed that the unit was legally a one bedroom.

Defendants JOHN and LENORA BRENNAN argue that the contract of sale included disclaimers as to reliance on any representations by sellers and that they made

2

[* 2]

no affirmative misstatements. They also assert that Plaintiffs were represented by independent counsel and a broker, and had a responsibility to perform their own due diligence.

## Corcoran and Rieders

Plaintiffs have asserted eight causes of action against Defendants CORCORAN and RIEDERS. They are: bad faith, loss of quiet enjoyment, breach of the warranty of habitability, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and civil conspiracy.

## Bad Faith

Plaintiffs alleges that Defendants acted in bad faith in breaching the contract of sale. Defendants CORCORAN and RIEDERS are entitled to dismissal of this cause of action as against them as they are not parties to the contract.

## Loss of Quiet Enjoyment and Breach of Warranty of Habitability

Defendants CORCORAN and RIEDERS are entitled to dismissal of these causes of action as against them as they are not the owners or landlord of the apartment.

## Breach of Fiduciary Duty

Plaintiffs assert a separate cause of action for breach of fiduciary duty against CORCORAN and RIEDERS, alleging that, as the sellers' agents, they were obligated under Real Property Law (RPL) § 443(4)(a) to act honestly and in good faith and to disclose all facts known to them that materially affected the value or desirability of the property.

However, New York courts have held that RPL § 443(4)(a) does not impose a fiduciary duty to a buyer on seller's agent. In *Ader v Guzman*, 135 AD3d 668 (2d Dept 2016), the First Department explicitly rejected a buyer's breach of fiduciary duty claim

3

[* 3]

against a seller's broker, holding that Real Property Law § 443 does not alter the New York common law of agency with respect to real estate which adheres to the doctrine of "caveat emptor".

Similarly, in *Rallis v Brannigan*, 2008 NY Slip Op 30164(U) [Sup Ct, Nassau County 2008], the court emphasized that § 443 imposes duties enforceable only through professional discipline, not civil liability.

Accordingly, Plaintiffs' Ninth Cause of Action for breach of fiduciary duty must be dismissed.

**Fraudulent Inducement and Negligent Misrepresentation**

While the Court finds that CORCORAN and RIEDERS did not owe Plaintiffs a fiduciary duty as sellers' agents, that determination does not resolve the remaining claims for fraudulent inducement and negligent misrepresentation, which are based on the same core allegations.

Those allegations, that CORCORAN and RIEDERS marketed the apartment as a legal two-bedroom despite knowing the cellar level could not lawfully be used as a bedroom, and that they staged and described the space in a way that suggested otherwise, may support claims for fraud or negligent misrepresentation. New York courts have allowed such claims to proceed against seller's agents where there is evidence of affirmative misrepresentation or concealment of known material facts (see *Joseph v NRT Inc.*, 43 AD3d 312 [1st Dept 2007]; *Elango Med. PLLC v Trump Palace Condominium*, 2024 WL 2960377, 2024 NY Misc LEXIS 13801 [Sup Ct, NY County 2024]).

CORCORAN and RIEDERS assert they are entitled to summary judgment dismissing the causes of action for fraudulent inducement and negligence misrepresentation for three reasons.

[* 4]

First, they argue that as the sellers' brokers, they owed no fiduciary duty to the Plaintiffs because they acted solely as listing agents under Real Property Law § 443 and never represented the Plaintiffs in the transaction.

Second, they deny taking any affirmative actions to misrepresent the legal status of the apartment.

Third, CORCORAN and RIEDERS contend that the Plaintiffs, or their broker and attorney, were provided with the offering plan prior to the contract signing, and that the plan indicated the apartment was a one-bedroom. They argue that Plaintiffs could not have justifiably relied on the apartment being marketed and staged as a two-bedroom.

As to the first argument, while CORCORAN and RIEDERS, as the seller's brokers, did not have a fiduciary duty under Real Property Law § 443 to disclose problems with the apartment, they can be held liable where they actively conceal or misrepresent a material fact regardless of their lack of fiduciary obligation to the buyer, (*Jablonski v Rapalje*, 14 AD3d 484, 485 [2d Dept 2005]; *Bethka v Jensen*, 250 AD2d 887, 888 [3d Dept 1998]).

As to their second argument, CORCORAN and RIEDERS argue they did not affirmatively misrepresent the apartment's legal status, but this is not a case of mere silence or omission. Here, CORCORAN and RIEDERS affirmatively marketed and staged the apartment as a two-bedroom. The listing from CORCORAN described the cellar level as a "master suite," and CORCORAN staged the cellar level as a bedroom with a bathroom.

Further, internal communications between RIEDERS and the sellers reflect their awareness that the apartment was legally a one-bedroom. In a December 2015 email, RIEDERS advised the sellers to consider an offer from a different prospective buyer because that buyer was also considering a "backup apartment that...has a legal 2nd

5

bedroom." RIEDERS noted that issues with the lack of a private garden and the lack of a legal second bedroom had made the apartment harder to sell, and that the offer was worth "thinking through before making a final decision."

The present case can be distinguished from the facts *in Dille v Zoelle LLC*, 220 AD3d 409 [1st Dept 2023], cited by CORCORAN and RIEDERS. There, the court found no liability for a minor misstatement about doorman hours. Here, the misrepresentation that the apartment was a legal two-bedroom concerns a fundamental feature of the apartment.

As to their third argument, CORCORAN and RIEDERS assert that notwithstanding the misrepresentation, Plaintiffs could not have justifiable relied on their actions in marketing the apartment as a two-bedroom because they were given the offering plan which they claim indicated that the apartment was a one-bedroom and that the true status of the apartment could have been discovered had the Plaintiffs exercised due diligence.

Plaintiffs argue that they could not have understood from the plan that the apartment was legally a one-bedroom.

The offering plan does not clearly state how many bedrooms are allowed in Apartment B. There is no section of the plan that identifies Apartment B as either a one-bedroom or a two-bedroom unit. Contrary to CORCORAN's assertion, the offering plan does not include a copy of the certificate of occupancy.

There are only two places in the offering plan where the layout of apartment B is referenced.

The first is a chart of share allocations (p. 10 of the offering plan) which only states that the apartment has 3-1/2 rooms. The second is labeled, the "Sponsor's Statement of

6

Present Condition of the Property," which describes the physical condition of the property as of August 25, 1981. This statement indicates that apartment B is 2-1/2 rooms, plus a cellar and that the cellar is used as a playroom.

This statement includes no information about what the legal use of the apartment is, it is only a description of how it was being used. There is no indication that the cellar could only be used as a playroom. Further, the statement describes what the use was in 1981, which was at odds with how it was shown to the Plaintiffs in 2017.

Although the certificate of occupancy was not disclosed by any party and is not included in the offering plan, it also would not have resolved the issue.

Whether the bedroom and bathroom on the cellar level was legal is not obvious from the offering plan or the certificate of occupancy. Determining whether the bedroom in the cellar was legal would require specialized knowledge of the New York City building code.

Although defendants contend that the plaintiffs should have discovered the apartment's true legal configuration through their own diligence, the doctrine of caveat emptor does not insulate a seller or broker from liability where there is evidence of affirmative misrepresentation (see *Jablonski v Rapalje*, 14 AD3d 484, 485 [2d Dept 2005]; *Joseph v NRT Inc.*, 43 AD3d 312, 313 [1st Dept 2007]).

Considering the ambiguity in both the offering plan and the certificate of occupancy, and the absence of clear indications about the apartment's legal configuration, there is a question of fact as to whether the Plaintiffs could have determined that the unit was limited to a single bedroom. A similar situation was presented in *Elango Med. PLLC v Trump Palace Condo.*, 2024 WL 2960377, 2024 N.Y. Misc. LEXIS 13801 [NY Sup Ct 2024], where the court denied summary judgment on a fraudulent misrepresentation

7

[* 7]

claim against CORCORAN and its agent. There, the agent advertised a residential unit as a medical office despite internal emails showing the condominium had never been approved for such use. The court found question of fact as to whether the plaintiffs justifiably relied on the marketing and broker's representations, particularly where the broker knew of the legal limitations and continued promoting the illegal use.

As in *Elango*, the Plaintiffs here have submitted internal communications showing that CORCORAN and RIEDERS knew the apartment lacked a legal second bedroom and still promoted it as a two-bedroom unit.

The questions as to whether it was clear from the offering plan that the apartment was a one-bedroom raises questions of fact as to whether Plaintiffs could have justifiably relied on the misrepresentations of CORCORAN and RIEDERS.

**Unjust Enrichment**

Plaintiff alleges a cause of action for unjust enrichment against all of the Defendants. Defendant CORCORAN and RIEDERS argue that cause of action should be dismissed as against them on the grounds that no privity existed between them and the Plaintiffs, citing *Sperry v Crompton Corp.*, 26 AD3d 488, 489 [2nd Dept 2006], aff'd, 8 NY3d 204 [2007].

However, while the Court of Appeals affirmed the Second Department decision in *Sperry*, it did not hold that privity was required for a claim of unjust enrichment only that the relationship in that case was too attenuated. The Court held, "While we agree with Sperry that a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, we nevertheless conclude that such a claim does not lie under the circumstances of this case. Here, the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to

8

[* 8]

support such a claim," (*Sperry v Crompton Corp.* 8 NY 3d at 215-216. see also *Mandarin Trading Ltd. v Wildenstein,* 16 NY3d 173 at 182 [2011]; *Nasca v Greene,* 216 AD3d 648 [2d Dept 2023]).

In the present case, it is for a trier of fact to determine if the relationship between Plaintiffs and CORCORAN and RIEDERS was too attenuated to find it would be unjust for them to retain that portion of Plaintiffs' purchase price that they received as their fee.

**Civil Conspiracy**

Finally, the Plaintiffs argue that CORCORAN and RIEDERS participated in a broader effort to conceal the apartment's legal status. While New York doesn't recognize civil conspiracy as an independent cause of action, such claims may connect Defendants to an underlying tort if there's evidence of coordinated action (see *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474 [1st Dept 2010]; *Alexander & Alexander of N.Y., Inc. v Fritzen*, 68 NY2d 968, 969 [1986]).

"[A] cause of action sounding in civil conspiracy cannot stand alone but stands or falls with the underlying tort" (*Romano v Romano,* 2 AD3d 430, 432 [2d Dept 2003]). However, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme," (*Litras v Litras*, 254 AD2d 395, 396 [2d Dept 1998]; *see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 969 [1986]; *Brackett v Griswold,* 112 NY 466, 467 [1889]; *Romano*, 2 AD3d at 431, 432).

In order "to establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury"

9

(*Abacus Fed. Sav. Bank v Lim,* 75 AD3d 472, 474 [1st Dept 2010]).

Here, Plaintiffs have produced communications that, if accepted, could support a finding that CORCORAN and the BRENNANS acted in concert to misrepresent the apartment as a legal two-bedroom. That evidence, viewed in the light most favorable to the non-moving party, raises triable issues of fact concerning whether a coordinated scheme existed to induce Plaintiffs into purchasing the apartment on the false representation that it was a legal two bedroom.

**Cross-Claims**

CORCORAN and RIEDERS move to dismiss all cross claims asserted against them.

Defendants SARAH MARTEL, HALSTEAD PROPERTY LLC, and BRENT HEINE have each asserted cross-claims against CORCORAN and RIEDERS, seeking indemnification and contribution. These cross-claims argue that if they are found to be liable to the Plaintiffs it would be because of CORCORAN and RIEDERS' actions.

MARTEL, who represented the buyers at closing, claims that any harm to the plaintiffs was caused by CORCORAN and RIEDERS' failure to disclose the cellar's legal limitations. She states that she had no role in staging or advertising the apartment and relied on the sellers' agents to provide accurate information about the layout.

HALSTEAD and HEINE, who were the buyers' brokers, raise similar claims. They say that CORCORAN and RIEDERS, as the sellers' exclusive agents, gave misleading information about the apartment and were the ones most likely to know that the cellar was not legally habitable.

However, the claims against MARTEL, HALSTEAD and HEINE, are based on their own fiduciary duties to Plaintiffs and their alleged failure to exercise reasonable care in performing their duties as Plaintiffs' attorney, broker, and engineer respectively. There is

10

no claim that any liability would be purely vicarious, nor is there a claim to a contractual right to indemnity.

If MARTEL, HALSTEAD or HEINE are found liable to Plaintiffs it would be based on their own actions and not the acts of CORCORAN and RIEDERS.

Indemnification applies only where one party bears no actual fault and is held liable solely due to another's wrongdoing, typically under a vicarious liability theory or express contractual duty (see *McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 374 [2011]). Accordingly, the indemnification cross-claims must be dismissed.

The cross-claims for contribution are a different matter. Under CPLR 1401, "[t]wo or more persons who are subject to liability for damages for the same personal injury or injury to property or wrongful death may claim contribution among them …"

Contribution is permitted when multiple parties have caused the same harm, even if their liability is based on different legal theories, such as negligence or fraud. It applies where parties breach independent duties which combine to produce a single harm.

The cross-claims for contribution against CORCORAN and RIEDERS by MARTEL, HALSTEAD and HEINE, are not based on a theory of vicariously liability but on a claim that even if cross-claimants are liable, the actions of CORCORAN and RIEDERS contributed to Plaintiffs' damages as well.

Here the claim is that acts of CORCORAN and RIEDERS in misrepresenting the apartment as a two bedroom, and the acts of MARTEL, HALSTEAD and HEINE in failing to exercise due diligence in determining whether the apartment was a legal two bedroom, all contributed to Plaintiff buying the apartment.

Therefore, the cross-claims against CORCORAN and RIEDERS should not be dismissed.

11

[* 11]

### Cross-Claims by Corcoran and Rieders

CORCORAN and RIEDERS have also asserted cross claims for contribution and indemnification against Defendants MARTEL, HALSTEAD and HEINE, and move in the alternative for summary judgement on their cross claims.

While the notice of motion seeks summary judgment on their cross-claims, their papers submitted in support of the motion do not articulate a basis or demonstrate a prima facie case for summary judgment on those claims.

### The Brennans

Plaintiffs have asserted causes of action against the BRENNAN Defendants for breach of contract, bad faith, loss of quiet enjoyment, warranty of habitability, fraudulent inducement, unjust enrichment and civil conspiracy. The BRENNAN Defendants move to dismiss the complaint as against them.

### Bad Faith, breach of contract, fraudulent inducement and civil conspiracy

The claims for bad faith, breach of contract, fraudulent inducement and civil conspiracy are based on the allegations that the BRENNANS together with Defendants CORCORAN and RIEDERS falsely marketed and staged the apartment as a two-bedroom apartment when they knew it was a legal one-bedroom.

The BRENNAN Defendants argue that they cannot be held liable for any alleged misrepresentations because the Plaintiffs explicitly disclaimed reliance on outside statements in the contract of sale.

The BRENNANS also argue that the Plaintiffs received and reviewed the offering plan, which they claim clearly identified the unit as a one-bedroom apartment with a cellar playroom.

12

Under New York law, a fraud claim is barred when a sophisticated party signs a contract that clearly states they are not relying on statements made outside the agreement, as held in *Danann Realty Corp. v Harris*, 5 NY2d 317 [1959], and *HSH Nordbank AG v UBS AG*, 95 AD3d 185 [1st Dept 2012].

In the present case, both the contract of sale and the first rider include such disclaimers. Paragraph 35 of the first rider states:

> "Purchaser acknowledges that neither Seller nor anyone on behalf of Seller have made any representations or held out any inducements to Purchaser as to the finances, physical condition or state of repair of the premises or unit, or any other matter or thing affecting or related to the premises or the unit, except as herein expressly set forth. Purchasers represent and warrant that purchasers are fully aware of the physical condition and state of repair of the unit. Sellers shall not be responsible or liable for any statements, representations, warranties, promises, conditions, agreements or other information … relating to the preemies or the unit … except as herein expressly set forth."

However, there was subsequently a second rider to the contract dated December 12, 2016. Paragraph 3 of the second rider contains the following representation:

> "Seller represents that no alterations or additions were made to the unit without any required consent of the corporation … nor without compliance with governing codes, laws, rules and regulations."

The second rider states that its provisions control in the event of a conflict with the rest of the terms of the contract or the first rider:

> "In the event of any inconsistency between the provisions of this Second Rider and the printed form of Contract of Sale or any other Rider attached thereto, the provisions of this Second Rider shall govern and control."

This express statement that no illegal alterations were made to the apartment is not subject to the general disclaimers in the first rider. By affirmatively representing that there were no illegal alterations made, the sellers implicitly represented that the

13

[* 13]

bathroom in the cellar was legal. As the installation of a bathroom in the cellar was in fact an illegal alteration, it was outside of the clause limiting reliance on sellers' representations.

A reasonable buyer could have concluded from this representation, together with the presence of the bathroom in the cellar, that the cellar could legally be used as living space, such as a bedroom.

While the BRENNAN Defendants allege that they had no direct communication with the Plaintiffs, as set forth more fully above, a defendant may be liable for a tort if their actions were a part of a common scheme even if they did not directly communicate with the plaintiffs.

"[A] plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme" (*Litras v Litras*, 254 AD2d 395, 396 [2d Dept 1998]; *see Alexander & Alexander of N.Y. v Fritzen,* 68 NY2d at 968, 969; Brackett v Griswold, 112 NY 454, 466-467; *Romano*, 2 AD3d 430, 431-432).

The Plaintiffs allege that the BRENNANS participated in a conspiracy to fraudulently induce Plaintiffs to believe the apartment was a legal two bedroom by allowing their broker to market the apartment as a legal two-bedroom unit and by allowing the broker to stage the cellar level as a bedroom.

According to the Plaintiffs, the cellar level was presented with a made-up bed and styled as a master suite, despite the BRENNANS knowing it did not meet legal requirements for habitable space. Plaintiffs cite communications between the BRENNANS and CORCORAN indicating the BRENNANS were warned that the lower level was not a legal bedroom, and that this had impacted the apartment's marketability.

14

[* 14]

This conduct goes beyond silence or a failure to correct a misunderstanding. If proven, it could amount to active concealment, which may support a fraud claim even where there are contractual disclaimers (see *Jablonski v Rapalje*, 14 AD3d 484 [2d Dept 2005]).

New York courts have held that sellers may be liable for fraud where they actively conceal a defect or create a false impression about the condition or legality of a property, regardless of whether the buyer received disclosure documents (see *Jablonski v Rapalje*, 14 AD3d 484; *Razdolskaya v Lyubarsky*, 160 AD3d 994 [2d Dept 2018]).

The BRENNANS also argue that the Plaintiffs were represented by both counsel and a broker and had ample opportunity to discover the apartment's legal condition before closing. They note that the offering plan, engineer's report, and other documents were available to the Plaintiffs, and that any failure to review them cannot be blamed on the sellers.

As discussed above the offering plan does not clearly indicate that the apartment is a one bedroom, therefore there remains a question of fact if the Plaintiff's reasonably relied on the misrepresentations.

Here, the Plaintiffs engaged both a broker and a lawyer to assist them in the sale. While Plaintiffs' broker and lawyer may have some liability for not conducting adequate due diligence, their culpability, if any, does not absolve the BRENNANS from liability if they actively participated in the misrepresentations by listing the apartment as two-bedroom and staging it with a bedroom and bathroom in the cellar level.

The BRENNANS raise potential defenses based on the contractual disclaimers and the Plaintiffs' failure to conduct full due diligence; however, they have not met their burden for summary judgment. The representation in the second rider, that there were

[* 15]

no illegal alterations to the apartment raises a question of fact as to whether Plaintiffs were justified in relying on the bathroom on the cellar level together with the staging and marketing of the unit as a two-bedroom to believe the apartment was a legal two bedroom.

Accordingly, summary judgment must be denied as to the causes of action for breach of contract, bad faith, fraudulent inducement and civil conspiracy.

**Unjust enrichment**

The cause of action for unjust enrichment against the BRENNAN Defendants is based on the claim that based on the fraudulent misrepresentation, the Plaintiff's paid higher price for the apartment than they would have paid had they known it was a legal one bedroom apartment and that it would be unjust from the BRENNANS to retain difference between the contract price and the market value of the apartment as a legal one bedroom. As discussed above, the BRENNAN Defendants have not demonstrated that they did not participate in falsely marketing and staging the apartment as a two bedroom and therefore are not entitled to dismissal of the cause of action for unjust enrichment.

**Loss of quiet enjoyment and breach of warranty of habitability**

Lastly, as the BRENNAN Defendants were not the owners or landlords of the apartment during the period after the sale when Plaintiffs in possession of the apartment the causes of action for loss of quiet enjoyment and breach of warranty of habitability must be dismissed.

WHEREFORE, it is hereby ORDERED that the motion for summary judgment by Defendants the CORCORAN GROUP and DEBORAH RIEDERS dismissing the complaint is granted only to the extent of dismissing the causes of action for bad faith, loss of quiet enjoyment, and breach of warranty of habitability, and is otherwise denied; and it is further,

16

ORDERED that the motion for summary judgment by Defendants JOHN and LENORA BRENNAN dismissing the complaint is granted only to the extent of dismissing the causes of action for loss of quiet enjoyment and breach of warranty of habitability, and is otherwise denied; and it is further,

ORDERED that the cross-claims for indemnification against Defendants the CORCORAN GROUP and DEBORAH RIEDERS are dismissed; and it is further,

ORDERED that that portion of the motion of Defendants the CORCORAN GROUP and DEBORAH RIEDERS to dismiss the cross-claims for contribution against them is denied; and it is further,

ORDERED that that portion of the motion of Defendants the CORCORAN GROUP and DEBORAH RIEDERS for summary judgment on their cross-claims indemnification and contribution against Defendants SARAH MARTEL, HALSTEAD PROPERTY, LLC, and BRENT HEINE is denied.

This constitutes the Decision and Order of the Court.

E N T E R:

_____

JSC

17