| **475 Fifth Owner LLC v T-C 475 Fifth Ave. Venture LLC** |
|---|
| 2026 NY Slip Op 30635(U) |
| February 19, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 654459/2022 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. MELISSA A. CRANE**          PART    60M

*Justice*

---------------------------------------------------------------X

475 FIFTH OWNER LLC and 475 FIFTH MEZZ L.P., as
successor and assign to 475 FIFTH OWNER LLC,

Plaintiffs,

- v -

T-C 475 FIFTH AVENUE VENTURE LLC, T-C 800 17TH
STREET NW VENTURE LLC, DIAZ ARCHITECT &
ASSOCIATES, P.C.,

Defendants.

---------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 654459/2022 |
| MOTION DATE | 08/09/2024 |
| MOTION SEQ. NO. | 004 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 209, 210, 211

were read on this motion to/for          SUMMARY JUDGMENT (AFTER JOINDER)        .

Defendants T-C 475 Fifth Avenue Venture LLC and T-C 800 17th Street NW Venture LLC (collectively referred to as "Seller") move for an order pursuant to CPLR 3212 for summary judgment against plaintiffs 475 Fifth Owner LLC and 475 Fifth Mezz L.P., as successor and assign to 475 Fifth Owner LLC (collectively referred to as "Buyer"). Upon the foregoing documents and oral argument on April 24, 2025, and post argument letter briefs, the motion is denied. **It is important to note defendant did not argue that, under these facts, the fraud claims duplicate the breach of contract claims.**

### Factual Background

Buyer commenced this action to recover damages in connection with the purchase of a property located at 475 Fifth Avenue, New York, New York ("property"). On January 21, 2022, Buyer executed a Membership Interest Purchase and Sale Agreement ("MIPSA") with "Seller"

**654459/2022  475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL**          **Page 1 of 10**
**Motion No.  004**

[* 1]

regarding the property (NY St Cts Elec Filing [NYSCEF] Doc No. 39, First Amended Complaint [FAC] ¶ 19). The property is a 275,000-square-foot, 24-story office building located on Fifth Avenue and 41st Street (*id.* ¶ 27). Seller was owned in a partnership by Nuveen Real Estate ("Nuveen") and Norges Bank Investment Management (*id.* ¶ 20). Buyer's main point of contact with Seller was Ines Olesen ("Olesen"), who was Nuveen's director and head of dispositions (*id.* ¶ 24). The closing of the sale of the membership interests in the property took place on May 19, 2022 (*id.* ¶ 31).

In its amended complaint, Buyer accuses Seller of active misrepresentation designed to thwart Buyer's efforts to uncover serious deterioration to the property's façade that was suffering from severe water infiltration (*id.* ¶ 172). Buyer alleges the following four causes of actions against Seller: (1) fraud and active concealment of the deterioration and water infiltration issues with the property's façade; (2) fraudulent misrepresentation; (3) breach of contract pursuant to provisions 10.1 and 10.4 of the MIPSA; and (4) breach of contract pursuant to provision 13.1 (f) of the MIPSA. The court dismissed the fifth cause of action for aiding and abetting against defendant Diaz (NYSCEF Doc No. 88, Decision and Order dated February 15, 2024).

## I. Fraud Claims

Buyer asserts two fraudulent representations by Seller. First, Buyer claims Seller's representation in paragraph 13.1(f) of the MIPSA was false. That section states:

> To Seller's knowledge, and except as disclosed by municipal searches received from the Title Company, neither Seller nor Property Owner has received any written notice from any governmental body or agency of any violation or alleged violation of any zoning ordinance, land use law or building code with respect to the Property, which violation or alleged violation has not been corrected.

Despite these representations, the Property had, in fact, received a DOB violation prior to closing that was not corrected. The DOB violation related to a failure to complete a Cycle 9A

654459/2022 475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL    Page 2 of 10
Motion No. 004

2 of 10

[* 2]

FISP report. Although Buyer may have known that the report was late, it did not know that there was a DOB violation concerning the circumstance and Seller concealed the reasons <u>why</u> the report was late. In particular, Seller failed to apprise Buyer that its architect, Diaz, had performed considerable work, including photographs and a report, that reflected water damage to the façade. In addition, internal e-mail communications between the property managers and Olesen discuss the façade and water infiltration problems that existed prior to the closing. These documents were in Seller's possession, yet Seller did not make them available to the Buyer.

In addition, Buyer points out that, in a response to a questionnaire, that Buyer's lender submitted to Seller, Seller's representative, Borosage, checked "unknown" to questions concerning the existence of roof, wall and window leaks, despite being aware that leaks existed. Moreover, Buyer claims that Seller actively concealed the significant capital expenditures associated with the Local Law 11 inspection. Specifically, Seller informed Buyer that there would be "no near-term capital needs," despite anticipating $1 million in capital expenditures, including Local Law 11 work. Indeed, Seller's own internal accounting documents anticipated nearly $1,000,000 in financial liability related to the property's façade (NYSCEF Doc No. 167, Offering Memorandum Email, p. 2; (NYSCEF Doc No. 168, Offering Memorandumm, p. 3).

## DISCUSSION

To recover damages for fraud and fraudulent misrepresentation, Buyer must prove a material misrepresentation of a fact, made with knowledge of falsity, an intent to induce reliance thereon, justifiable reliance on the misrepresentation, and damages (*see Eurycleia Partners, LP v Seward & Kissel,* LLP, 12 NY3d 553, 559 [2009]). As the moving party, Seller has the initial burden of demonstrating that it is entitled to summary judgment as a matter of law dismissing the fraudulent misrepresentation and active concealment claims (*see Gluck v Mapfre Ins. Co. of N.Y.,*

221 AD3d 662, 663 [2d Dept 2023 ] [A defendant moving for summary judgment must negate, prima facie, an essential element of the plaintiff's cause of action]). In the context of real estate transactions, a claim of fraud must be analyzed alongside the doctrine of caveat emptor (*see Caceci v Di Canio Constr. Corp.*, 72 NY2d 52, 57 [1988]; *see also Hecker v Paschke*, 133 AD3d 713 [2d Dept 2015]).

The doctrine of caveat emptor imposes no liability on a seller [or the seller's agent] for failing to disclose information regarding the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller [or seller's agent] that constitutes active concealment of a defective condition (*see Gouba v Sportsman Props., Inc.*, 200 AD3d 658, 661 [2d Dept 2021]; *see also Stambovsky v Ackley*, 169 AD2d 254, 257 [1st Dept 1991]). Mere silence on the part of the seller, without some act or conduct that deceived the buyer, does not amount to a concealment that is actionable as fraud (*see Gouba*, 200 AD3d at 661). "To maintain a cause of action to recover damages for active concealment, the plaintiff must show, in effect, that the seller or the seller's agents **thwarted** the plaintiff's efforts to fulfill his [or her] responsibilities fixed by the doctrine of caveat emptor" (*id.*; *see also Jee Foo Realty Corp. v Lemle*, 259 AD2d 401, 402 [1st Dept 1999]).

Where the buyer has the means available of knowing, by the exercise of ordinary intelligence, the truth concerning the condition of the property and fails to make use of such means, he [or she] will not be heard to complain that he [or she] was induced to enter into the transaction by misrepresentations (*see DDJ Mgt., LLC v Rhone Group L.L.C.*, 15 NY3d 147, 154 [2010]). Even where the buyer argues that there was active concealment, there must be a showing that the seller's conduct thwarted buyer's efforts to discover the true condition of the property (*see TIAA Global Invs., LLC v One Astoria Sq. LLC*, 127 AD3d 75, 89 [1st Dept 2015]).

The record contains no evidence that Buyer directly questioned Olesen regarding the leaks or condition of the roof or façade, or whether Buyer asked Olesen, who then directed the questions to Borosage (NYSCEF Doc No. 211 at 24). However, caveat emptor does not insulate a seller from liability "[w]hen a seller omits facts that are peculiarly within its knowledge, and the other party cannot discover such facts through a diligent inspection of the premises and the exercise of ordinary intelligence …" (*Perez-Faringer v Heilman*, 95 AD3d 853, 854 [2d Dept 2012]; *533 E. 12th St., LLC v DS 531 E. 12th Owner LLC*, **2020 WL 5040362**, *6, 2020 LEXIS 4926, *16-17 [Sup Ct, New York County 2020] [finding that neither caveat emptor nor a contractual "as is" clause barred liability where the defects to the roof, façade, walls, and ceiling related to conditions peculiarly within the seller's knowledge]).

Here, there is a question of fact requiring a trial concerning whether Seller thwarted Buyer's discovery of the true condition of the building and whether Buyer's reliance was reasonable or not. First, Seller replied "unknown" on the pre-survey questionnaire for leaks in the roof, windows and walls, and stated in the offering memorandum that the property had "no near-term capital needs." Then, Seller represented that these documents were the only public documents when it actually had in its possession a violation from the DOB concerning the failure to complete the Cycle 9A inspections. These circumstances raise a question of fact as to whether Buyer justifiably relied upon the representations Seller made in the Offering Memorandum (EDOC 169).

Moreover, it is for the finder of fact to decide whether, based on the information it had, Buyer conducted reasonable due diligence of the property. Buyer hired EDG who conducted a review of the façade. EDG discovered no issues, and deemed the façade to be in "decent shape" (NYSCEF Doc No. 146). In between November 2021, and January 2022, representatives of Buyer "toured" the property on numerous occasions to perform inspections (NYSCEF Doc No. 138, tr at

654459/2022  475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL          Page 5 of 10
Motion No. 004

5 of 10

10-13, 25), and Buyer's representative submitted the questionnaire to Seller in which Borosage marked the existence of leaks as "unknown" when Seller and Borosage knew there were leaks in the roof (NYSCEF Doc No. 130, tr at 163-164; NYSCEF Doc No. 44).

Additionally, on December 13, 2021, Olesen reviewed and emailed the December 2021 offering memorandum to Nuveen. The Offering Memorandum clearly stated that "[t]he [p]roperty will also continue to require capital infusion in the estimated amount of $120,000 to investigate water infiltration in the roof … as revealed over the past storms. In addition, total capital expense is projected at $4.2 MM over the next eight years, mainly driven by upgraded to building amenities and Local Law 11 and 97 work" (NYSCEF Doc No. 191 at 4). Another draft of the disposition recommendation dated December 2021, an internal document, clearly states that "the property will continue to require a significant amount of base building capital over the next eight years." The list included "water infiltration in the sub-basement, basement, and **roof exacerbation in the recent storms"** (NYSCEF Doc No. 190 at 6).

It is entirely possible, that the false statement in the MISPA that no violations existed combined with what Seller withheld from Buyer, created a false sense of security such that Buyer did not inquire further. Thus, there is an issue of fact as to whether Seller thereby prevented Buyer from gaining a true understanding of the condition of the property. In other words, there are significant issues concerning whether the statements Seller did make to Buyer, while at the same time omitting information to the contrary and, considering the relative lack of publicly available information, negate justifiable reliance (*see Jablonski v Rapalje*, 14 AD3d 484, 488 [2d Dept 2005]).

Based on the foregoing, the court denies summary judgment on the first and second causes of action (*see Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 315 [2004] ["Summary judgment

654459/2022  475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL          Page 6 of 10
Motion No. 004

6 of 10

[* 6]

should not be granted where there is any doubt as to the existence of a factual issue or where the existence of a factual issue is arguable"]).

## II. Causes of Action for Breach of Contract

Seller is also not entitled to a judgment as a matter of law dismissing the third and fourth causes of action for breach of contract. Buyer avers that Seller breached paragraph 10.1 of the MIPSA by failing to maintain the premises (*id.* ¶ 217) and further breached paragraph 13.1 (f) by failing to provide the purchaser with a copy of the DOB violation (*id.* ¶ 241).

The essential elements of a cause of action for a breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach (*see Lebedev v Blavatnik*, 193 AD3d 175, 183 [1st Dept 2021]). "The merger doctrine in a real estate transaction provides that once the deed is delivered, its terms are all that survive and the purchaser is barred from prosecuting any claims arising out of the contract" (*TIAA Global Invs., LLC*, 127 AD3d at 85 [citations omitted]). "The only exception to this rule is where the parties clearly intended that the particular provision of the contract supporting the claim would survive the delivery of the deed" (*id.*).

Here, the contract clearly states that "[t]he provisions of this Article X shall survive Closing and the delivery of the Assignment" (NYSCEF Doc No. 128 at 19). Based on the language,

654459/2022  475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL        Page 7 of 10
Motion No. 004

7 of 10

[* 7]

the parties intended provisions 10.1[1] and 10.4[2] of the MISPA to survive delivery of the deed, and, therefore, the doctrine of merger does <u>not</u> extinguish Buyer's breach of contract claims alleged in its third cause of action.

Meanwhile section 13.1 (f) where Seller disclaimed knowledge of violations of the building code was arguably breached because, as stated earlier, Seller did know about a violation from DOB. Again, no one has argued that the breach of contract duplicates the fraud.

Finally, section 13.2 of the contract, does not relieve Seller from liability. This section states in relevant part:

> For purposes of this Agreement, the term Seller's "knowledge" means the actual knowledge of the Designated Representative of Seller, without taking into account any constructive or imputed knowledge, and will not be construed to refer to the knowledge of any other officer, director, agent, employee or representative of the

---

[1] 10.1: Operations. From the Effective Date through the Closing Date, Seller will cause Property Owner to continue to operate and maintain the Property substantially consistent with its standards of operation and maintenance prevailing immediately prior to the Effective Date. During the pendency of this Agreement, Seller shall, at Seller's expense, continue to maintain the casualty and liability insurance policies covering the Improvements which are currently in force and effect (including existing deductible amounts) and with the casualty policy insuring the Improvements at no less than the replacement value of the Improvements (subject to existing deductible amounts) (the "Current Insurance"). Notwithstanding anything contained herein to the contrary, Neither Seller nor Property Owner shall be deemed to be in default of any provision of this Agreement for any failure or delay in performance if and to the extent such failure or delay is the result of conditions beyond Seller's control arising directly or indirectly from any contagion or pandemic, including coronavirus (COVID-19 and its variants) or the response thereto. Seller shall not commence any capital expenditure projects after the Effective Date, unless determined by Seller to be reasonably necessary for health and safety or to address any emergency.

[2] 10.4 Service Agreements /Leases. Subject to Section 11.6, from and after the date hereof, Seller will not, and will not permit Property Owner to, enter into new service agreements that would bind Property Owner after Closing, unless determined by Seller to be reasonably necessary for health and safety or to address any emergency. ("New Service Agreements"), or to enter into new leases and to amend on terminate existing Leases ("New Leases"), with respect to the Property, including agreements to make leasehold improvements and pay leasing commissions, without first obtaining Purchaser's consent. Purchaser will be deemed to have consented to any proposed New Service Agreement or New Lease unless Seller receives written notice from Purchaser, reasonably objecting within three (3) Business Days following receipt by Purchaser of the proposed New Service Agreement or New Lease.

Seller, or any affiliate of the Seller, or to impose upon such Designated Representative any duty to investigate the matter to which such actual knowledge or the absence thereof pertains, or to impose upon such Designated Representative any individual personal liability.

Olesen is Seller's designated representative, whom Seller represents is the employee primarily responsible for the ownership and management of the property. Seller argues that there is no evidence that Olesen knew about the DOB. However, it is undisputed that Borosage did have knowledge.

Olesen testified that it is common practice for Nuveen to have their asset managers work with their property managers, and she asked Borosage to put together a five-year capital plan for the property. This included anticipating $750,000 cost for the Local Law 11, and Cycle 9A repairs (NYSCEF Doc No. 136 at 43-45). She further testified that she relied on the property managers for that information (*id.* at 46), and confirmed Borosage worked for her, as a property manager engaged by Nuveen (*id.* at 183). "[T]he general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it" (*Center v Hampton Affiliates, Inc.*, 66 NY2d 782, 785 [1985]; *see also Gulf Ins. Co. v Transatlantic Reins. Co.*, 69 AD3d 71, 97 [1st Dept 2009]). Looking favorably to the non-moving party, this testimony raises a triable issue of fact regarding whether Borosage was standing in Olesen's shoes and thereby became Seller's designated representative.

Accordingly, it is hereby

ORDERED that motion for summary judgment pursuant to CPLR 3212 of defendants T-C 475 Fifth Avenue Venture LLC and T-C 800 17th Street NW Venture LLC's is denied, and it is further;

ORDERED that all parties shall appear for a pre-trial conference on March 5, 2026 at 3:30 pm over Microsoft teams; and it is further

654459/2022  475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL          Page 9 of 10
Motion No. 004

9 of 10

[* 9]

ORDERED that defendants 475 Fifth Avenue Venture LLC and T-C 800 17th Street NW Venture LLC serve this order with a notice of entry on plaintiffs within ten (10) days of the efiled date of this order.

2/16/2026
**DATE**

MELISSA A. CRANE, J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☐ GRANTED | ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**654459/2022  475 FIFTH OWNER LLC ET AL vs. T-C 475 FIFTH AVENUE VENTURE LLC ET AL**
**Motion No.  004**

**Page 10 of 10**